[Civ. No. 7037.   Third Dist.   Mar. 31, 1944.]

THE PEOPLE, Respondent, v. ONE 1941 BUICK 8—
FOUR-DOOR SEDAN, ENGINE NO. 54135130, Defendant; MRS. MARIE LITTLEFIELD, Appellant.

Robert A. Zarick and Anthony J. Kennedy for Appellant.

Robert W. Kenny, Attorney General, and James H. Oakley, Rose M. Sheehan, Ward Sullivan and Allen L. Martin, Deputies Attorney General, for Respondent.

THOMPSON, J.—This is an appeal from a judgment rendered under section 52 of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123, and amendments thereto, Deering's Supp. to Gen. Laws of 1941, p. 2006, Act 3796), forfeiting to the State a Buick taxicab automobile because the driver thereof, without the knowledge of the owner, violated section 3 of that act by selling one pint of whiskey, without a license, to passengers riding in the machine. It is conceded the driver

of the taxicab was guilty of a misdemeanor in selling the liquor without a license. The owner of the automobile contends that the taxicab was illegally forfeited since it was in actual use as a common carrier at the time of the sale of liquor, and that all common carriers are specifically exempted from application of the statute by the provisions of section 52(i) thereof. In no case relied upon by the respondent in support of the forfeiture does it appear that a similar exemption of "common carriers" was involved.

Mrs. Marie Littlefield has owned and operated a taxicab business in Sacramento for sixteen years under the name of Union Taxicab Company. The taxicab in question is one of a fleet of twenty automobiles used by her in that business. She employs forty-six drivers of machines, among whom was Leslie L. Bruce who operated the condemned car at the time of the sale of the liquor. Before employing her drivers Mrs. Littlefield was required by ordinance to, and she did, obtain certificates of approval of each driver from the chief of police. The drivers were paid fixed salaries. The evidence is undisputed that the owner had no knowledge or reason to believe that Bruce or any other driver was selling alcoholic liquor or concealing or transporting it in her taxicabs. On the contrary, she testified that the drivers had "strict orders against that" handling of liquor. Bruce had been employed as a driver for about two years. He worked from 5 o'clock p. m. until 4 o'clock a. m. of each day. On the night of his arrest he had been paid $17.95 for earned taxicab fares. The headquarters, or chief dispatching office, of the taxicab company was at the Greyhound Bus Station at Seventh and L Streets.

At 11:30 p. m. of April 16, 1943, Sergeant Edwin B. Woltkamp, a military police investigator, Private David K. Knight, V. G. Clock and Mr. Gearing, the last named two being officers of the State Board of Equalization, hired the Buick taxicab operated by Leslie L. Bruce, to convey them to the Bridge Cafe on the Yolo side of the Sacramento River. Before entering the cafe, the passengers requested the driver to remain there until they returned. After leaving the Bridge Cafe, on their way back to Sacramento, one of the passengers asked the driver, Bruce, if he could get them some whiskey. He replied that he could get "none right now," but said that he might be able to obtain some later. He stopped at the Star Hotel at Fourth and I Streets to telephone. Returning to the car he reported that "he couldn't

do us any good at the present. He said the old lady was still there." His reference to the "old lady" evidently meant Mrs. Littlefield, his employer. That statement infers that the driver of the taxicab knew that his employer would object to his furnishing liquor to the passengers. The men were then driven to the Rio Dance Hall, where they arrived at 12:30 a. m. They paid the driver 75 cents for the hire of the taxicab, which was then driven away. About 2 o'clock that morning, at the request of Mr. Gearing, Private David K. Knight went to the Greyhound Bus Station and secured Mr. Bruce, who returned with his taxicab to the dance hall and conveyed the same passengers to the California Hotel, located at Eighth and I Streets. Gearing sat with the driver in the front seat. The other gentlemen sat in the rear seat. Just before they arrived at the hotel, Bruce reached into the glove compartment of his machine and took from it a pint bottle of whiskey which he handed to Mr. Gearing, who passed it back to Sergeant Woltkamp. The sergeant took the bottle and gave Bruce a $5.00 bill from which to pay for the whiskey. Bruce returned $1.50 of that amount. When the driver walked around to open the door for the exit of his passengers he was arrested by Mr. Clock. The Buick taxicab was driven into the State Garage and impounded pending proceedings, which were subsequently commenced, to forfeit the car. Notice of forfeiture was duly served on Mrs. Littlefield. She answered the petition, denying her knowledge of the unlawful sale of alcoholic liquor by her driver, and claiming exemption from forfeiture of the taxicab under the express provisions of section 52(i) of the act on the ground that the machine at the time of the offense was in actual use in her taxicab business which was being operated as a common carrier.

The trial court rendered judgment for the State, forfeiting the taxicab. From that judgment this appeal was perfected.

For the purposes of this proceeding we must assume that the liquor was illegally sold by the driver of the taxicab without the knowledge or consent of the owner of the machine, and that the taxicab was then in actual use in conveying passengers in the business of a common carrier. The evidence is uncontradicted in that regard.

The theory of the State is that, since the vehicle was then also being used in violating the statute, the unlawful act pre-

cludes the innocent owner from asserting that the taxicab was in use as a common carrier.

It has been definitely established that a taxicab business of carrying passengers for hire constitutes a common carrier. (Civ. Code, § 2168; *Bezera* v. *Associated Oil Co.,* 117 Cal.App. 139 [3 P.2d 622]; *In re Martinez,* 22 Cal.2d 259 [138 P.2d 10]; 96 A.L.R. 755, note; 45 A.L.R. 300, note; 8 W. & Ph., perm. ed., 35.) It is true that when a private owner of an automobile consents to its lawful use by another person who illegally operates it to transport narcotics contrary to the statute, the owner may not defeat a procedure to forfeit the car on the ground that he had no knowledge of the violation of the statute. (*People* v. *One 1933 Plymouth Sedan,* 13 Cal.2d 565 [90 P.2d 799]; *People* v. *One 1937 Plymouth 6, 4-Door Sedan,* 37 Cal.App.2d 65 [98 P.2d 750]; *People* v. *One 1939 La Salle 8 Touring Sedan,* 45 Cal.App.2d 709 [115 P.2d 39]; *Van Oster* v. *Kansas,* 272 U.S. 465 [47 S.Ct. 133, 71 L.Ed. 354].) But it will be observed that in none of the preceding cases, and in none which have been cited by the respondent, was the question involved as to whether a similar statute specifically exempting common carriers from the application of its provisions would deprive an innocent owner of a taxicab from defending a proceeding to forfeit the machine on the ground that he had no actual or constructive notice of the illegal use of the vehicle or that it was exempt because it was being used in the business of a common carrier.

Section 2168 of the Civil Code defines a common carrier as: "*Everyone* who offers to the public to carry persons, property, or messages, . . . *is a common carrier* of whatever he thus offers to carry."

It is the owner of the taxicab business, and not the vehicles used for that purpose, who becomes the common carrier. In the present case the owner expressly prohibited the use of her taxicabs for transporting liquor. The taxicabs were reserved for exclusive use in her business as a common carrier. If under such circumstances an automobile could be forfeited then the owner might lose his car even though a thief had stolen the vehicle from his garage and used it to conceal or transport liquor. Likewise, a Pullman car or a steamboat would be subject to forfeiture under similar circumstances. That procedure would be abhorrent to law.

The law does not favor forfeiture. A statute which

authorizes it should be strictly construed in favor of the owner. (*Santos* v. *Dondero,* 11 Cal.App.2d 720 [54 P.2d 764]; 37 C.J.S. 8, sec. 4b.) While it is true that it has been held an action to forfeit property for the violation of statutes is a proceeding *in rem* (*J. W. Goldsmith etc. Co.* v. *United States,* 254 U.S. 505 [41 S.Ct. 189, 65 L.Ed. 376]), such cases are founded on violations imputed to the owners. An inanimate object cannot violate a statute without the aid of some individual. In none of those cases was there involved an express exemption, as there is in the present proceeding, of all common carriers.

Section 3 of the Alcoholic Beverage Control Act, which is involved in this case, provides in part that, "Any *person* violating any provision of this section shall be guilty of a misdemeanor." (Italics ours.) And section 51g of the same act provides that:

"It shall be unlawful for any person to use any automobile or other vehicle to conceal, convey, carry, or transport any alcoholic beverages, . . . with the design to evade the excise taxes or license fees imposed by this act; . . . .

"Any automobile or other vehicle used to conceal, convey, carry or transport alcoholic beverages, still, materials or supplies in violation of this section shall be forfeited to the State of California."

But section 52(i) of that act specifically exempts common carriers from the provisions of the law in the following language:

"Nothing contained herein shall apply to common carriers or to an employee acting within the scope of his employment under this act."

That exemption clause applies to two classes of persons, first to "common carriers," and second to "any employee acting within the scope of his employment." In the present case the driver of the taxicab was not acting within the scope of his employment when he sold alcoholic liquor to a passenger, and he therefore may not be excused from liability. He was guilty of a misdemeanor. The exception specifically declares that "nothing contained herein shall apply to' common carriers."

In the present case the taxicab was being actually used as a common carrier when the liquor was unlawfully sold to one of the passengers. It was then actually convey-

ing passengers. If the Legislature had intended to render a vehicle used as a common carrier liable to confiscation if it was also being used by the driver to conceal, convey or transport liquor contrary to law, it would have been easy to have so stated by including in the exemption clause the language "nothing contained herein shall apply to common carriers *while the vehicle is being used for the exclusive purpose of conducting its business.*" The respondent relies upon the theory that the preceding italicized language must be inferred. ■ In construing a statute, courts must interpret the meaning from the language employed. Courts are powerless to insert into a statute qualifying provisions not contained in the language used, to carry out an assumed legislative intent. (*Seaboard Acceptance Corporation* v. *Shay,* 214 Cal. 361, 366 [5 P.2d 882]; *Santos* v. *Dondero, supra.*) In the case last cited it is said at page 724:

"An intention to confiscate property will not be indulged in by the aid of the strained construction asserted by respondent, where the purpose of the legislature appears clearly otherwise."

■ The forfeiture of valuable property belonging to an innocent person is a harsh penalty, and it should not be countenanced in the absence of a statute clearly so providing.

■ Independent of the common carrier exclusion clause, this statute does not contemplate that the owners of automobiles which are illegally used without the knowledge or consent of the owners shall become liable to forfeitures under all circumstances.

Section 52 of the act, in providing the procedure which must be followed in confiscating the property, specifically authorizes the owner to file an answer thereto, and indicates the evidence which may be adduced as a complete defense to that action. Section 52(f) declares in that regard:

"At the time set for the hearing any of the owners who have verified answers on file may show by competent evidence that the alcoholic beverages *or other property* were not in fact used contrary to the provisions of this act. The claimant of any right, title or interest in said alcoholic beverages or other property under a lien, mortgage or conditional sales contract which is officially of record may prove that such lien, mortgage or conditional sales contract is bona fide and was created after a reasonable investigation of the moral responsibility, character and reputation of the lienor, mort-

gagor or vendee *and without any knowledge that such alcoholic beverages or other property was being, or was to be, used contrary to the provisions of this act."* (Italics added.)

The foregoing provision recognizes the right of certain claimants of specified interests in the property to allege and prove as a complete defense to a proceeding for forfeiture that they were not negligent in acquiring their title or that they had no actual or implied knowledge that it was being used, or was likely to be used, to conceal, convey or transport alcoholic beverages contrary to the act.

We conclude that the taxicab which is involved in this proceeding was wrongfully forfeited, because the car was actually being used in the business of a common carrier at the time of the alleged offense.

The judgment is reversed.

Peek, J., and Adams, P. J., concurred.

A petition for a rehearing was denied April 19, 1944, and respondent's petition for a hearing by the Supreme Court was denied May 25, 1944.