[S. F. No. 20285. In Bank. Dec. 23, 1959.]

ALBERT VALLERGA et al. Appellants, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Respondents.

*Assigned by Chairman of Judicial Council.

Golden & Stefan and J. Bruce Fratis for Appellants.

Morris Lowenthal, Juliet Lowenthal, Karl D. Lyon and Charles L. Barnard as Amici Curiae on behalf of Appellants.

Edmund G. Brown and Stanley Mosk, Attorneys General, Charles A. Barrett and Wiley W. Manuel, Deputy Attorneys General, for Respondents.

WHITE, J.—Albert Vallerga and Mary Azar, coowners of an on-sale general liquor license, appeal from a judgment denying their application for mandamus to compel the respondent Department of Alcoholic Beverage Control to set aside its revocation of their license. The Alcoholic Beverage Control Appeals Board affirmed the order of revocation.

The licensees are the owners of the First and Last Chance Bar located in Oakland. On March 7, 1956, an accusation was filed against them as operators of the bar by an agent of the Department of Alcoholic Beverage Control, charging them with a violation of section 24200, subdivision (e) of the Business and Professions Code. That section provides in part that a basis for a liquor license suspension or revocation is ''Where the portion of the premises of the licensee upon which the activities permitted by the license are conducted are a resort for illegal possessors or users of narcotics, prostitutes, pimps, panderers, or sexual perverts.'' It provides further that in ''addition to any other legally competent evidence, the character of the premises may be proved by the general reputation of the premises in the community as a resort for illegal possessors or users of narcotics, prostitutes, pimps, panderers, or sexual perverts.'' The accusation alleged that during the period in question, ''the portions of the premises of the licensees, where the activities permitted by the license are conducted, have been and still are a resort for sexual perverts, to wit: Homosexuals.''

A duly appointed hearing officer found that the accusations were true; that one of the licensees frankly admitted that the ''premises were established as a resort for lesbians and homosexuals, and that he was aware that said premises were a hang-out for homosexuals.'' The hearing officer concluded that '' [g]rounds constituting a basis for the suspension or revocation of the license issued to the above-named licensees for the above-described premises have been established under the provisions of Section 24200 (e) of the Alcoholic Beverage Control

Act. . . . It is further determined that by reason of the facts above found the continuance of the said license would be contrary to public welfare and morals within the meaning of said words as used in Article XX, Section 22, of the California Constitution.''

Section 22 of article XX of the Constitution provides in part, that the ''department shall have the power in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals. . . .'' The recommendation of revocation of the hearing officer was adopted by the department.

The licensees, and amici curiae appearing in their behalf, contend that the accusation cannot properly be based on section 24200, subdivision (e) of the Business and Professions Code as that section is unconstitutional for reasons stated by this court in *Stoumen* v. *Reilly* (1951), 37 Cal.2d 713 [234 P.2d 969]. That case concerned a revocation for an alleged violation of section 58 of the Alcoholic Beverage Control Act, now section 25601 of the Business and Professions Code. The section made it a misdemeanor for a licensee to suffer his premises to be used as a place of resort for purposes injurious to the public morals or health. There was evidence that homosexuals met on and patronized the premises with the licensee's knowledge, but there was no evidence of misconduct involving homosexuals. In reversing a judgment denying an application for mandamus, this court stated at page 716: ''Members of the public of lawful age have a right to patronize a public restaurant and bar so long as they are acting properly and are not committing illegal or immoral acts; the proprietor has no right to exclude or eject a patron 'except for good cause,' and if he does so without good cause he is liable in damages. (See Civ. Code, §§ 51, 52.) In analogous cases it has been held that a liquor license could not be revoked on the ground that prostitutes had dined in the licensee's restaurant (*In re Farley*, 217 N.Y. 105 [111 N.E. 479]) and that a conviction of maintaining a bawdy house was not supported by evidence that women of loose or immoral character had obtained lodging in defendant's hotel (*Patterson* v. *State*, 9 Okla. Cr. 564 [132 P. 693, 695]). In the Patterson case the court pointed out that such women are human beings entitled to shelter and that it is not a crime to give them lodging unless it is done for immoral purposes. The same reasoning applies to the patron-

age of a public restaurant and bar by homosexuals, and mere proof of patronage, without proof of the commission of illegal or immoral acts on the premises, or resort thereto for such purposes, is not sufficient to show a violation of section 58.''

Subdivision (e) of section 24200 was added to the Business and Professions Code in 1951, subsequent to the decision in the Stoumen case. (Stats. 1955, ch. 1217, p. 2230.) When called upon to construe that subdivision the courts have done so in conformity with the holding in the Stoumen case, and the general rule of construction that where possible legislation will be construed to avoid unconstitutional applications. Thus, in 1957, a revocation based upon this subsection was sustained in *Kershaw* v. *Department of Alcoholic Beverage Control*, 155 Cal.App.2d 544 [318 P.2d 494], where there was conduct on the premises by homosexuals who openly sought and obtained sexual satisfaction by aberrant methods. The court declined to consider the issue as to the constitutionality of the section had only patronage been involved, remarking, by way of dictum, that ''It would seem a fair inference to conclude that in making . . . [this] amendment the Legislature acted in the light of and consistently with the rule of the Stoumen case, by inference excluding from the coverage of subdivision (e) the type of conduct which the Supreme Court had declared harmless and not inimical to public welfare and morals. . . . It involves a question that need not be and is not decided at this time.'' (*Id.* at p. 550.)

The issue was again raised in 1958 in *Nickola* v. *Munro*, 162 Cal.App.2d 449 [328 P.2d 271], where the court again held that the conduct involved in that case supported the finding that many of the patrons, to the knowledge of the licensee, committed acts which were contrary to the public welfare or morals. The question of the construction of subdivision (e) of section 24200 was again referred to, and the court stated that the Legislature did not intend that the limitations of the Stoumen case were to be disregarded in the application of subdivision (e), and that as so construed subdivision (e) was constitutional.

We are not persuaded by the dicta in the Kershaw and Nickola cases relating to the construction of subdivision (e). The language of that subdivision is too clear and unambiguous to permit any other meaning than that which the literal language conveys. Not only does it declare that the grounds for revocation are established if the prohibited classes ''resort'' on the premises, but it further makes the legislative

intent all the more apparent by providing that the character of the premises "as a resort" may be proved by general reputation. To hold that by such language the Legislature intended that grounds for revocation existed only when objectionable conduct took place on the premises would constitute judicial legislation under the guise of interpretation. This we are not permitted to do because it would amount to an invasion of a field committed in its entirety to the legislative branch of government. ▮ In *People* v. *One 1940 Ford V8 Coupe,* 36 Cal.2d 471 [224 P.2d 677], it is held at page 475: "In construing the statutory provisions a court is not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language. The court is limited to the intention expressed. (*Seaboard Acceptance Corp.* v. *Shay,* 214 Cal. 361, 365-366 [5 P.2d 882]; *People* v. *One 1941 Buick 8 Four Door Sedan,* 63 Cal.App.2d 661, 667 [147 P.2d 401].)" And in *Bonwell* v. *Justice Court,* 148 Cal.App.2d 906 [307 P.2d 716], the court rejected a contention that a statute be interpreted so as to require knowledge of unlawful activity in order that it might be held constitutional, the court stating: "We are here limited to the construction of the plain language of the section as enacted and to the intention therein expressed." (*Id.* at p. 908.) ▮ It is concluded, therefore, that subdivision (e) purports to authorize revocation of a license without requiring anything more to be shown than that the premises are a resort for certain classes of persons, and as such is unconstitutional for the reasons set forth in the Stoumen case. Language in the Kershaw and Nickola cases contrary to this construction of subdivision (e) of section 24200 is disapproved.

It is not intended to imply by the foregoing that the Kershaw and Nickola cases were improperly determined. In both of those cases the court held that the conduct there involved was such that the continuance of the license would be contrary to the public welfare or morals, within the meaning of section 22 of article XX of the Constitution. ▮ The provisions of section 22 are made self-executing, and revocation of a license may be based on that ground alone if the licensee is otherwise accorded due process of law. (See also Bus. & Prof. Code, § 24200, subd. (a).) In the Stoumen case, in considering the applicability of the constitutional provision as grounds for revocation by the board, the court stated that the latter's discretion was not absolute "but must be exer-

cised in accordance with the law, and the provision that it may revoke a license 'for good cause' necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals. (See *Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131-132 [173 P.2d 545].) In order to establish 'good cause' for suspension of plaintiff's license, something more must be shown than that many of his patrons were homosexuals and that they used his restaurant and bar as a meeting place.'' In the Kershaw and Nickola cases the additional evidence beyond that of mere use of the premises was abundantly present, and revocation of the licenses on the constitutional ground was justified in each case.

It is suggested that the record in the present case justified a conclusion that the continuance of the license will be ''contrary to public welfare and morals,'' and that the revocation thereof can be justified on constitutional grounds, as in the Kershaw and Nickola cases. In the Nickola case the court held generally that seeking sexual gratification in a public tavern with another of the same sex would offend the moral sense of the general public. The court stated at page 457: ''There are many things that can be done in the privacy of the home which may not be illegal, but if done in a public tavern are directly offensive to public morals and decency, and demonstrate that the participants are sex perverts. The continuance of the license under such circumstances 'would be contrary to public welfare or morals' as provided in our Constitution. . . . Further than that we do not have to go.''

 Conduct which may fall short of aggressive and uninhibited participation in fulfilling the sexual urges of homosexuals, reported in some instances (see *Kershaw* v. *Department Alcoholic Beverage Control, supra,* 155 Cal.App.2d 544, 547-548), may nevertheless offend good morals and decency by displays in public which do no more than manifest such urges. This is not to say that homosexuals might properly be held to a higher degree of moral conduct than are heterosexuals. But any public display which manifests sexual desires, whether they be heterosexual or homosexual in nature may, and historically have been, suppressed and regulated in a moral society.

Such displays were put in evidence in the present case. Admittedly, the licensees' patrons were almost exclusively homosexuals and lesbians. Their sexual proclivities were displayed in that the majority of the female customers dressed in

mannish attire, and patrons usually paired off, men with men, and women with women. During the period of surveillance police officers testified that they observed women dancing with other women, and women kissing other women. A police-woman testified that as she and a companion policewoman sat at a table a female patron dressed in mannish attire sat down and said to her companion, "You're a cute little butch." Later in the evening this patron kissed the policewoman, and a waitress came by and warned the participants that if they wanted to continue such activity they should go into the rest-room. On a different occasion the policewoman observed a person who appeared to be a man by her dress and makeup but who, according to the waitress, was actually a woman, make use of the women's restroom.

A police officer testified that he observed a male patron and a grey-haired man approach, embrace each other at the bar, put their foreheads together while they carried on a whispered conversation, and that the grey-haired man then kissed the other and stated to the bartender: "Arley and I are going steady." This officer also testified that he observed a person dressed and made up as a man and who appeared to be a man, but who, the witness was informed, was in fact a woman, making use of the women's restroom.

The foregoing is sufficient evidence of a display of sexual desires and urges which, when made in a public place as a continuing course of conduct, could reasonably be found by the trier of fact to be "contrary to public welfare or morals." It is apparent in the present case, however, that the fore-going evidence was not relied upon by the finder of fact in arriving at the conclusion that continuance of the license would be contrary to public welfare or morals. The only find-ings in the present case were that the portion of the premises where the activities permitted by the license were conducted were "a resort for sexual perverts, to wit, homosexuals" and that the licensees were aware of that fact. It is true that a conclusion was drawn that the continuance of the license would be "contrary to public welfare and morals within the meaning of said words as used in Article XX, section 22, of the Califor-nia Constitution," but that determination was made only "by reason of the facts above found" and not in reliance on the factual matters testified to by the police officers. Portions of that testimony were disputed by other testimony, and insofar as the record shows the trier of fact may well have determined that the circumstances testified to did not exist.

It is apparent also that the accusation, heretofore set out, is insufficient to charge the licensees with conduct subjecting their license to revocation other than pursuant to subdivision (e) of section 24200 of the Business and Professions Code. There is no hint in the language of the accusation which could put the licensees on notice that their license might be revoked on the ground that its continuance would be contrary to public welfare or morals, if evidence of such a finding were produced at the hearing. To sustain the revocation of the license herein under the aforesaid constitutional provision would violate due process of law in view of the limited charge contained in the accusation and findings made thereon. Nor can we affirm the revocation of a license under a statutory provision (Bus. & Prof. Code, § 24200, subd. (e)) which purports to authorize a revocation upon mere proof of resorting to or patronage of a licensed premises without proof of illegal, immoral or indecent acts on such premises.

Section 22, article XX of our Constitution vests the Department of Alcoholic Beverage Control with authority to institute disciplinary proceedings against a licensee and to revoke his license upon determination "for good cause" that the continuance of such license would be "contrary to public welfare or morals." Nothing we have herein stated is to be construed as infringing upon such authority. We hold only that an accusation filed under section 24200, subdivision (e) of the Business and Professions Code, and findings made thereunder, will not for the reasons above stated, sustain revocation or suspension of a license.

The judgment is reversed with directions to the court below to grant a peremptory writ of mandate directing the Department of Alcoholic Beverage Control to set aside its order of revocation.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

Appellants' petition for a rehearing was denied January 20, 1960. Dooling, J. pro tem.,* participated therein in place of Peters, J., who deemed himself disqualified.

*Assigned by Chairman of Judicial Council.