[Civ. No. 20134.   First Dist., Div. One.   June 11, 1962.]

ALICE R. MORELL et al., Plaintiffs and Appellants, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Defendant and Respondent.

Small & Werthimer, Richard J. Werthimer and James A. Blumberg for Plaintiffs and Appellants.

Stanley Mosk, Attorney General, James B. Davis and Wiley W. Manuel, Deputy Attorneys General, for Defendant and Respondent.

SULLIVAN, J.—Alice R. and William B. Morell, doing business in San Francisco as the 585 Club and holding an on-sale general liquor license, appeal from a judgment denying a writ of mandate sought by them to set aside the decision of the Department of Alcoholic Beverage Control, hereafter referred to as department, revoking the above-mentioned license.

On April 17, 1959, the department filed an accusation against appellants in two counts. Count I charged that between March 18, 1959, (later amended to read March 13th), and April 11, 1959, appellants permitted the licensed premises to be used as a disorderly house or place to which people resorted for purposes contrary to public welfare and morals in that they permitted the following acts to occur on the premises: males kissing and caressing males, males engaging in lewd and indecent acts with other males, and three specific instances on different dates of patrons inviting three different agents of the respondent department to engage in lewd acts. Count II charged that between the same dates, sexual perverts were permitted to regularly congregate in the licensed premises.

The above acts were charged as providing grounds for the suspension or revocation of appellants' license in that the continuance of such license would be contrary to public welfare and morals as set forth in article XX, section 22 of the California Constitution and section 24200, subdivision (a) of the Business and Professions Code.[1] It was also charged that such acts provided additional grounds for suspension or revocation under section 24200, subdivision (b) in that the acts in Count I were a violation of section 25601 (keeping a disorderly house) and the acts in Count II were a violation of section 24200, subdivision (e) (licensed premises a resort for sexual perverts).

The department, following the recommendation of the hearing officer who found the charges in both counts to be true, revoked appellants' license on each of said counts severally

---

[1] Unless otherwise indicated, all code references hereafter are to the Business and Professions Code.

and separately. The Alcoholic Beverage Control Appeals Board affirmed the department's decision as to Count I but reversed as to Count II on the authority of *Vallerga* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 313 [1 Cal.Rptr. 494, 347 P.2d 909], which declared section 24200, subdivision (e) to be unconstitutional. Appellants thereupon filed a petition for writ of mandate in the court below and, upon the stipulation of the parties, the matter was submitted on such petition, the return thereto, the record of the proceedings had before the department and the appeals board, and the written points and authorities of respective counsel. The court below rendered judgment discharging the alternative writ of mandate theretofore issued, vacating its order staying enforcement and execution of the department's decision and denying appellants' petition for a peremptory writ of mandate.

Appellants' contentions before us may be summarized as follows: (1) That the evidence is insufficient to support the finding that the appellants permitted or suffered the licensed premises to be used as a disorderly house or as a place to which people resorted for purposes contrary to the public welfare and morals because there is no evidence that appellants or their employees had knowledge of any immoral or illegal acts occurring on the premises; (2) that the hearing officer committed prejudicial error in refusing to permit a psychologist, produced as a witness by appellants, to testify that the acts alleged to have occurred on the premises were not lewd, obscene or perverse; and (3) the department was guilty of an abuse of discretion in imposing the severe penalty of revocation.

We first set forth the rule defining the scope of our review. ■ Since the respondent department is an agency upon which the Constitution has conferred limited judicial powers, its administrative determination must be affirmed if there is substantial evidence to support it. (Cal. Const., art. XX, § 22; *Brice* v. *Department of Alcoholic Beverage Control* (1957) 153 Cal.App.2d 315 [314 P.2d 807]; *Oxman* v. *Department of Alcoholic Beverage Control* (1957) 153 Cal.App.2d 740, 744 [315 P.2d 484]; *Marcucci* v. *Board of Equalization* (1956) 138 Cal.App.2d 605, 608-609 [292 P.2d 264].) ■ The court below was not entitled to exercise its independent judgment on the effect and weight of the evidence as it is permitted to do when reviewing the findings of legislatively created statewide administrative agencies. (*Brice* v. *Department of*

*Alcoholic Beverage Control, supra; Benedetti* v. *Department of Alcoholic Beverage Control* (1960) 187 Cal.App.2d 213, 216-217 [9 Cal.Rptr. 525] ; for the rule in statewide administrative agencies see our opinion in *Caro* v. *Savage* (1962) 201 Cal.App.2d 530, 538 [20 Cal.Rptr. 286].) █ It was therefore its function, as it is now ours, merely to determine whether the findings of the department are supported by substantial evidence. In making this determination, conflicts in the evidence must be resolved in favor of the administrative decision and all legitimate and reasonable inferences must be indulged in to support it. (*Nelson* v. *Department of Corrections* (1952) 110 Cal.App.2d 331, 337-338 [242 P.2d 906] ; *Marcucci* v. *Board of Equalization, supra; Oxman* v. *Department of Alcoholic Beverage Control, supra.*)

The record of the administrative proceedings had before the department discloses that during the period from March 13, 1959, to and including April 11, 1959, several undercover agents of the department entered the 585 Club and made observations as to the behavior of the patrons on the premises. Five of such agents testified as to investigations on five separate dates.

Agents Ciraolo, Bucher and Lampe went to the club in the late evening on March 13th. They entered separately— Lampe first, then Bucher, then Ciraolo. When Ciraolo went in, it was about 11:30 p. m. He remained for a little more than an hour. He testified that there were about 80 customers inside, all male, and many acting in an effeminate manner. He saw two male adults kiss and embrace each other for about five minutes. The two male bartenders on duty called customers by terms of endearment. One of the bartenders called a male customer to the telephone and addressed him by a woman's name. This same customer later invited Ciraolo to spend the weekend with him. Ciraolo also observed two male patrons, seated at the bar, patting and caressing each other. During the time he was on the premises he saw two bartenders, a waiter and a woman "I.D." checker on duty but apparently did not see or at least recognize William Morell.

Agent Bucher saw two male patrons embracing and caressing each other and rubbing various parts of each other's bodies for a period of 10 to 15 minutes. This occurred at the far end of the bar and although a bartender was in the vicinity, Bucher was not sure that the bartender saw the above conduct. Bucher also heard the bartenders using terms of endearment in addressing many of the customers. Agent

Lampe entered and took a seat at the bar. He became engaged in a conversation with a male patron during which the latter asked Lampe a question of a suggestive nature.

On March 19, 1959, Ciraolo returned to the 585 Club. He entered alone, agents Bucher and Narro following him shortly thereafter. There were about 20 or 30 customers on the premises all of whom were males. He met the same customer who on Ciraolo's first visit had invited the agent to spend a weekend with him. This customer called Ciraolo over to the piano bar, about 10 feet from the regular bar, engaged him in conversation, began stroking Ciraolo's leg for a minute or two, and finally solicited Ciraolo to commit a lewd and indecent act. Ciraolo later arrested the customer outside the premises. Apparently the above conversation was in a normal tone of voice and during the course of it, the piano was being played off and on. Agent Bucher testified that while he was there on this occasion, he overheard a male waiter tell a patron that he, the waiter, had gone into the back room with a female waitress and had tried on her dress, commenting that "he thought he looked swell in the dress. . . ." Neither Ciraolo nor Bucher saw William Morell on the premises.

Agent Donald Hauptman testified as to his visit to the club on the evening of March 20, 1959. He found 35 or 40 customers on the premises, all males. He observed two male adults seated at the piano bar, holding hands, kissing and caressing each other for about 30 minutes. They were in full view of the piano player and about 6 or 7 feet from the regular bar. While this was going on, a waiter brought them drinks. A waitress on duty on many occasions during the evening was in a position where she could observe the behavior of the above two customers. On several occasions she was only 6 or 7 feet away from them. However, Hauptman did not recall seeing Morell.

On March 22, 1959, Agent Steven Gin investigated the club. There were about 25 patrons in the place, of whom about six were women. He observed two bartenders and an I.D. checker on duty. He took a seat at the bar and remained there about one hour and 45 minutes. This was about 7 or 8 feet from the I.D. checker who remained at her post of duty during most of the time he was at the bar. A few minutes after Gin sat at the bar, a patron sitting next to him began talking to him, put his hand on Gin's knee for about 10 minutes, and made certain suggestive remarks to him and finally solicited Gin to engage in a lewd and indecent act. Some of the conversa-

tion was supplemented by suggestive facial expressions on the part of the patron. During the conversation, the I.D. checker was about 7 or 8 feet away, and during part of it, a bartender was standing right in front of the patron. At this time all of the patrons but about six had left the premises and the bar was quiet.

On April 11th, Agents Hauptman and Lampe returned to the club. Hauptman entered first, bought a drink at the bar, then stood near the jukebox, and later took a seat at a table. He testified that there were about 50 patrons on the premises, all males. Two bartenders and a woman I.D. checker were on duty. A patron sitting at the bar came over to Hauptman's table, engaged him in conversation, and solicited him to engage in a lewd and indecent act. The agent later arrested the patron outside the premises.

Agent Lampe after entering bought a drink and stood near the entrance. A patron got up from one of the tables, began talking to Lampe and kept trying to grab his hand. The I.D. checker was about 4 feet away from them. Neither Hauptman nor Lampe could state whether William Morell was on the premises.

Appellant William Morell testified that he was on the premises every night during the period in question from 6 p. m. until closing time at 2 a. m., except on Sundays. He was therefore not present on the occasion on Sunday, March 22d, testified to by Agent Gin. He stated that he patrolled the premises and, if there was any misbehavior, he would correct it. Morell testified that he did not see any of the acts or hear any of the conversations testified to by the agents. On cross-examination, he admitted that when he applied for a license for the premises in 1957, he was told by representatives of the department that the 585 Club was frequented by homosexuals and that he verified this by his own observation after he began operating the establishment.

One Warmuth, a bartender at the club for two years, testified that he was on duty during the period in question between 6 p. m. and 2 a. m. except on Mondays, his day off, and on Sunday, March 22d, when he worked the day shift. He denied seeing any of the acts or hearing any of the conversations complained of. He stated that Morell had instructed him when he was first employed to ask male patrons to move apart when they were too close together, and to have them leave, if they did not. He admitted on cross-examination that he knew it was a bar frequented by homosexuals and that Morell had so

told him. Occasionally he heard lewd conversations or at least what he thought were lewd conversations, and on those occasions told the patrons to stop.

The woman I.D. checker worked at the club on Fridays and Saturdays during the period in question. She testified that in accordance with Morell's instructions, she patrolled the place to see that the patrons were behaving themselves and not getting "chummy or friendly with one another." On some occasions when they did, she would tell them to stop and they would do so. She regarded it as part of her job to prevent male customers from holding hands or caressing each other. The above witness testified that she did not notice any of the acts or conversations complained of on the nights she worked, which included March 13, perhaps March 20, and April 11th.

Appellants make no attack on the sufficiency of the evidence to support the administrative findings that certain specific acts and conduct complained of by the department in fact occurred on the licensed premises. Appellants' main argument is that neither they nor their employees had any knowledge or notice of such objectionable occurrences, that they cannot be charged with having permitted or suffered such acts to take place, and that as a consequence no evidence supports the findings to that effect. In short, it is their position that a liquor license cannot be suspended or revoked in the absence of knowledge of the events warranting such disciplinary action. These arguments are devoid of merit.

Appellants were charged with and found guilty of violating section 25601, as a result of which grounds existed under section 24200, subdivision (b) for the revocation of their license.[2] Section 25601 does not provide that the condition of the licensed premises denounced by it must be knowingly created. No proof of knowledge by the licensee or his agents of the acts proscribed by the section is necessary, it

[2] Section 24200 provides in relevant part: "The following are the grounds which constitute a basis for the suspension or the revocation of licenses: . . . (b) Except as limited by Chapters 11 and 12 of this division, the violation or the causing or the permitting of a violation by a licensee of this division, . . . or any other penal provisions of law of this State prohibiting or regulating the sale . . . of alcoholic beverages or intoxicating liquors."

Section 25601 provides: "Every licensee, or agent or employee of a licensee, who keeps, permits to be used, or suffers to be used, in conjunction with a licensed premises, any disorderly house or place in which people abide or to which people resort, to the disturbance of the neighborhood, or in which people abide or to which people resort for purposes which are injurious to the public morals, health, convenience, or safety, is guilty of a misdemeanor."

being sufficient that the evidence show that such acts took place on the licensed premises. (*Benedetti* v. *Department of Alcoholic Beverage Control, supra,* 187 Cal.App.2d 213, 215-216; *Givens* v. *Department of Alcoholic Beverage Control* (1959) 176 Cal.App.2d 529, 534 [1 Cal.Rptr. 446]; *Swegle* v. *State Board of Equalization* (1954) 125 Cal.App.2d 432 [270 P.2d 518].) The *Benedetti* case, *supra,* dealt with an accusation based on the same constitutional and statutory provisions as the instant case. Appellants have not attempted to distinguish *Benedetti* or furnish us with any authority showing its holding is not applicable here. We find the following language from *Givens* v. *Department of Alcoholic Beverage Control, supra,* which was quoted in *Benedetti,* also apposite here: "The law requires more than that a licensee make some colorable efforts toward the maintenance of lawfully conducted premises. The law demands that he in fact so conduct his business that it meets the minimum requirements of decency and morality. If, as in this present case, the overwhelming evidence shows that the tavern is in fact a 'disorderly house,' there can be but one conclusion: that the licensee has permitted or suffered such a condition to exist." (176 Cal.App.2d at p. 534.)

Nor do we find any requirement of knowledge or notice in section 24200, subdivision (b) through which section 25601 operates to establish grounds for revocation. It is clear that the former section contains no language to the effect that the violations provoking disciplinary action must be knowingly done. As we have pointed out, the *Benedetti* case is unchallenged authority for the proposition that knowledge is not required where section 25601 operates through section 24200, subdivision (b) to provide grounds for suspension or revocation.[3] In *Mercurio* v. *Department of Alcoholic Beverage Control* (1956) 144 Cal.App.2d 626 [301 P.2d 474], the licensee was charged with permitting cocktail waitresses to accept drinks purchased by the customers in violation of rule 143 of the then State Board of Equalization. Violation of such rule established grounds for disciplinary action under section 24200, subdivision (b). Mr. Justice Bray, speaking for this court declared: "In neither rule 143 nor section 24200 is there any requirement that the 'permitting' be 'knowingly'

[3]Although section 24200, subdivision (b) is not specifically mentioned in *Benedetti,* it is clear from a reading of the opinion and the court's reliance on the *Givens* case, that such section was the statutory basis for the department's action.

done. . . . The very fact that rules and laws providing for violations for which disciplinary action may be taken, provide that some violations must be 'knowingly' done and as to others the word 'knowingly' is omitted, indicates that in the latter cases there is no requirement that the violations be knowing ones. 'Knowingly' not being required in either rule 143 or section 24200, the use of that word in the accusation was immaterial and is not necessary to be found. The board's finding that appellants permitted the violation was sufficient.'' (Pp. 630-631.)

As we pointed out above, appellants' license was revoked by the department also upon the grounds provided by section 24200, subdivision (a) and article XX, section 22, of the California Constitution.[4] There is no requirement in either provision that the licensee have knowledge or notice of the facts constituting its violation. (*Benedetti* v. *Department of Alcoholic Beverage Control, supra,* 187 Cal.App.2d 213, 218; *Mercurio* v. *Department of Alcoholic Beverage Control, supra,* 144 Cal.App.2d 626, 630-631; *Givens* v. *Department of Alcoholic Beverage Control, supra,* 176 Cal.App.2d 529.) In all of the above cases, disciplinary action was predicated and sustained upon the authority of subdivision (a) as well as subdivision (b) of section 24200.[5]

---

[4]Section 24200 in relevant part provides: ''The following are the grounds which constitute a basis for the suspension or the revocation of licenses: (a) When the continuance of a license would be contrary to public welfare or morals; but proceedings under this section upon this ground are not a limitation upon the department's authority to proceed under Article XX, Section 22, of the Constitution.''

California Constitution, article XX, section 22 in relevant part provides: ''The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, . . .''

[5]In support of their contention that the licensees' knowledge of the proscribed activities on their premises must be shown in order to sustain the revocation of license, appellants cite: *Osborne* v. *Winter* (1933) 133 Cal.App. 664, 666 [24 P.2d 892]; *Block* v. *Citizens Trust etc. Bank* (1922) 57 Cal.App. 518, 525 [207 P. 510]; *Vallerga* v. *Department of Alcoholic Beverage Control* *(Cal.App. 1959) 334 P.2d 294, 297, 298 and 343 P.2d 54, 60, 61; *Marcucci* v. *Board of Equalization* (1956) 138 Cal. App.2d 605, 610 [292 P.2d 264]; *People* v. *Conness* (1906) 150 Cal. 114, 120-121 [88 P. 821]; *Nickola* v. *Munro* (1958) 162 Cal.App.2d 449, 455 [328 P.2d 271]. None of these cases compel a conclusion different from that reached in the *Benedetti, Mercurio, Givens* and *Swegle* cases. We do not feel called upon to discuss them in detail.

*A hearing was granted by the Supreme Court on September 16, 1959. The final opinion of that court is reported in 53 Cal.2d 313 [1 Cal.Rptr. 494, 347 P.2d 909].

Even were we to assume, *arguendo*, that knowledge by the licensees or their agents of the occurrences complained of is necessary in order to sustain the penalty here imposed, it is clear to us that the evidence would support such a finding of knowledge. As we have heretofore noted in our summary of the evidence, appellants' employees were on the premises on all occasions when agents of the department made their investigation. Appellant Morell, by his own admission, was present on all such occasions except Sunday, March 22. While it may be assumed that some of the conversations and acts testified to by the agents might not have been heard or seen by Morell or his employees, it is also clear from the evidence that much of the objectionable behavior was open, conspicuous and in the full view of all present including the employees. The evidence supports the inference that such open and, in some instances, notorious behavior was visible to and hence noticed by the personnel employed in the club. Taken as a whole, the evidence depicts an atmosphere on the licensed premises of aberrant conduct so openly and publicly flaunted as to leave only the most naive unimpressed. This is entirely consistent with the admissions on the part of Morell and his bartender that they knew the bar was frequented by homosexuals.

The holder of a liquor license has the affirmative duty to make sure that the licensed premises are not used in violation of the law and the knowledge and acts of his employees are imputable to the licensee. (*Munro* v. *Alcoholic Beverage Control Appeals Board* (1960) 181 Cal.App.2d 162, 164 [5 Cal.Rptr. 527]; *Givens* v. *Department of Alcoholic Beverage Control, supra,* 176 Cal.App.2d 529, 534; *Fromberg* v. *Department of Alcoholic Beverage Control* (1959) 169 Cal.App.2d 230, 234 [337 P.2d 123]; *Mantzoros* v. *State Board of Equalization* (1948) 87 Cal.App.2d 140, 144 [196 P.2d 657]; *Swegle* v. *State Board of Equalization, supra,* 125 Cal.App.2d 432, 438; *Mercurio* v. *Department of Alcoholic Beverage Control, supra,* 144 Cal.App.2d 626, 630; *Cooper* v. *State Board of Equalization* (1955) 137 Cal.App.2d 672, 678 [290 P.2d 914]; *Endo* v. *State Board of Equalization* (1956) 143 Cal.App.2d 395, 401-402 [300 P.2d 366].)[6]

Tested by the rules governing our review, and in the light of the above authorities, it is clear that the evidence at the

---

[6]As Mr. Justice Dooling points out in *Mantzoros,* the proper question is not whether the employer is criminally liable for the employee's act, but whether the employee's knowledge or acts are imputable to the employer so as to subject the latter to discipline as a licensee.

administrative hearing supports the findings and decision of the department. Testimonial statements by appellants and their employees to the effect that they saw nothing objectionable on the premises constituted merely negative evidence and at the best only raised a conflict resolved unfavorably to appellants by the hearing officer.

Appellants argue that they are put in a difficult position in respect to the conduct of their business. On the one hand they cannot exclude patrons without good cause. (Appellants cite *Stoumen* v. *Reilly* (1951) 37 Cal.2d 713, 716 [234 P.2d 969].) On the other hand, they must not commit violations of the constitutional and statutory provisions here under discussion. They claim that as a practical matter, when a patron presents his identification card, they cannot ask him whether he is a homosexual or intends to engage in indecent behavior on the premises without risk of legal action. Therefore, appellants conclude, they should have knowledge of objectionable behavior before enduring revocation of license. This line of argument is sophistic and absurd. All that appellants and their employees had to do was to open their eyes as well as their ears. They would have found good cause to remove any objectionable patron from the premises. We see no problem confronting appellants if they were conscientious in performing the *affirmative* duty imposed on them to *make sure* that the law was not being violated. ▆▆ Where, however, as the evidence in this record discloses, objectionable behavior in a licensed establishment is of a continuing nature and not merely an isolated or accidental instance, it is an inescapable conclusion that the licensees have permitted and suffered the resultant condition which offends public welfare and morals and violates the statutory prohibition against keeping a disorderly house.

▆▆ We take up appellants' second contention dealing with the exclusion of testimony. At the beginning of appellants' case, they called a psychologist who, after preliminary questions as to her qualifications, was asked whether she considered homosexuality a perversion. An objection to the question was sustained. *Voir dire* examination by the department showed that the witness had not been on the licensed premises during the period involved. Appellants thereupon offered to prove by the witness that the acts charged in the accusation were not lewd, obscene or acts of perversion, that "in terms of public morals and public health, neither is seriously threat-

ened, . . ." and that "homosexual behavior is not uniquely different from other members of the population; . . ."[7]

Appellants argue that while the term "sexual perversion" may have a hard core of meaning for the average individual, actually the boundaries of moral conduct are not clearly defined. Much of the conduct involved in the instant case, appellants argue, was "innocuous and equivocal" and actually not within the limits of the definition of sexual perversion. It is claimed therefore that the offered testimony was material to determine whether or not the behavior involved was innocuous and equivocal. If it was unobjectionable, runs the argument, revocation of appellants' license constituted a taking of property without due process of law. Appellants cite no cases in support of the foregoing contention.

It has been held that homosexual behavior such as that shown by the evidence before us constitutes lewd and obscene conduct and sexual perversion. In *Kershaw* v. *Department of Alcoholic Beverage Control* (1957) 155 Cal.App.2d 544, 549 [318 P.2d 494], where the same general type of behavior was involved, the court stated: ". . . 'Obscenity' and 'sex pervert' have a core of meaning to the average person. Homosexual activity, to the extent indicated by the patrons of the licensee's bar, is within the general meaning of sexual perversion." In *Nickola* v. *Munro* (1958) 162 Cal.App.2d 449, 456-457 [328 P.2d 271], where the evidence consisted, *inter alia*, of males dancing with males, males kissing and being affectionate with males, and males engaging in activities similar to those in the record before us, this court said: "The contention that the words 'sex pervert' must be limited to one who commits perverted acts in violation of the Penal Code, such as sodomy or oral copulation, is without merit. This argument was disposed of adversely to appellant in the *Kershaw* case. To what was there said we add that when one male, by acts of the type here involved, seeks sexual gratification from another in a public tavern, he has committed acts of sex perversion and demonstrated that he is a sex pervert. We do not find it necessary to discuss the psychological aspects of homosexuality or to determine the outermost limits of homosexual conduct that amounts to sex perversion. All that we have to determine in this case is that the conduct here involved supports the finding that many of the patrons of this tavern, to the knowl-

---

[7]The offer of proof also related to the "constitutional aspect" of the provisions of section 24200, subdivision (e), which section is no longer involved in the case.

edge of the licensee, committed acts that should have informed the licensee that they were sex perverts, and that the acts amounted to sex perversion. The fact, if it be a fact, that these acts may not have been punishable under the Penal Code is immaterial. Seeking sexual satisfaction in the manner here described in a public tavern offends the moral sense of the general public. There are many things that can be done in the privacy of the home which may not be illegal, but if done in a public tavern are directly offensive to public morals and decency, and demonstrate that the participants are sex perverts. The continuance of the license under such circumstances 'would be contrary to public welfare or morals' as provided in our Constitution. That is the type of conduct here involved. Further than that we do not have to go.'' (Pp. 456-457.)

While both *Kershaw* and *Nickola* involved counts in the accusation charging grounds for revocation of license pursuant to section 24200, subdivision (e), which section was thereafter declared unconstitutional in the *Vallerga* case, they also included charges that the respective facts of each case constituted grounds for revocation of license since they offended public welfare and morals. In *Kershaw* the administrative findings expressly stated that such grounds existed pursuant to section 24200, subdivision (a), and section 22 of article XX of the Constitution. (155 Cal.App.2d 546, fn.[1]) In *Nickola,* the administrative findings established a violation of the same constitutional provision (162 Cal.App.2d 453). Although the Supreme Court in *Vallerga* rejected the reasoning (not relevant here) by which the *Kershaw* and *Nickola* cases sought to uphold the constitutionality of section 24200, subdivision (e), it approved such cases insofar as they held that the conduct therein involved (which we have pointed out was similar to that in the instant case) violated the other statutory and constitutional provisions, declaring: ''It is not intended to imply by the foregoing that the *Kershaw* and *Nickola* cases were improperly determined. In both of those cases the court held that the conduct there involved was such that the continuance of the license would be contrary to the public welfare or morals, within the meaning of section 22 of article XX of the Constitution.'' (*Vallerga* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 313, at p. 318.)

The conduct and activities shown by the evidence in the record are well within the core of meaning of the term ''sexual pervert'' as that term is known to the average person. Such

behavior clearly offends the constitutional and statutory provisions referred to above. The testimony which appellants sought to introduce in order to contradict the clear, certain and commonly accepted understanding of such behavior was immaterial and properly excluded by the hearing officer.

Finally, appellants contend that the penalty of revocation which was imposed on them was too drastic. The propriety of the penalty imposed by an administrative agency is a matter vested in the discretion of such agency and its decision thereon will not be disturbed unless there has been a clear abuse of discretion. (*Martin* v. *Alcoholic Beverage Control Appeals Board* (1959) 52 Cal.2d 287, 291 [341 P.2d 296].) This court is not free to substitute its own discretion in the matter. (*Macfarlane* v. *Department of Alcoholic Beverage Control* (1958) 51 Cal.2d 84, 91 [330 P.2d 769].) We find no abuse of discretion in the record.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied June 29, 1962, and appellants' petition for a hearing by the Supreme Court was denied August 8, 1962. Tobriner, J., did not participate therein.