[Civ. No. 12570. First Dist., Div. Two. June 7, 1944.]

THOMAS DANIEL WYATT, Respondent, v. ALVIN CERF et al., as Members of the Board of Medical Examiners, etc., Appellants.

Robert W. Kenny, Attorney General, Allen L. Martin and Carl W. Wynkoop, Deputies Attorney General, for Appellants.

Bradford M. Melvin, Chas. J. Wiseman and Oliver J. Carter for Respondent.

STURTEVANT, J.—The defendants, as and constituting the Board of Medical Examiners of the State of California, made an order cancelling and revoking the license authorizing the petitioner to practice medicine. He applied for a writ of mandamus directing the defendants to cancel said order. The trial court granted his application and made findings in his favor. From the judgment of the trial court based on said findings the defendants have appealed.

The controversy arises out of the following facts. On the 18th day of December, 1930, the defendant Board of Medical Examiners issued to the petitioner a license authorizing him

to practice medicine. Thereafter, charges were filed against the petitioner, but the record before us does not show the nature thereof. However, on the 23d day of October, 1940, the defendant Board of Medical Examiners purported to make an order placing the petitioner on probation for a period of five years from and after that date.

On the 29th day of May, 1942, Joseph W. Williams, an investigator for the Board of Medical Examiners, filed with the defendant board a charge which among other things alleged as follows:

"That on or about the 5th day of March, 1942, the said Thomas Daniel Wyatt, did, . . . provide, supply, administer, use or employ an instrument or substances or other means upon the person of one, Matilda Hope, a woman, with the . . . intent . . . to procure a miscarriage . . . said use or employment of said instruments or substances, or other means to procure said miscarriage . . . not then and there being necessary to preserve the life of the said Matilda Hope."

In another count said charge did specify as follows:

"That on or about the 24th day of March, 1942, the said Thomas Daniel Wyatt, did, . . . provide, supply, administer, use or employ an instrument or substances or other means upon the person of one, Mary Gribble, a woman, with the . . . intent . . . to procure a miscarriage . . . said use or employment of said instruments or substances, or other means to procure said miscarriage . . . not then and there being necessary to preserve the life of the said Mary Gribble."

On the same date another charge was filed against the petitioner which alleged among other things the following:

"(c) That he has since said order of probation violated section 2383 of the Business and Professions Code of the State of California, said violation being a misdemeanor, more particularly in that on or about the 17th day of November, 1941, said Thomas Daniel Wyatt was adjudged guilty of the offense of maliciously and wilfully disturbing the public peace and quiet by the use of profane and indecent language and challenging to fight and interfering with an officer of the law in the performance of his duties, by a judgment of the Justice of the Peace of Big Valley Township of the County of Lassen, State of California, upon a verdict of guilty of such charge in a proceeding in said Justice's court entitled 'The People of the State of California, Plaintiff vs. Thomas D. Wyatt, Defendant.' "

Based on said charges, on the 29th day of May, 1942, an

order to show cause was issued directing the petitioner to appear and show cause, if any he had, why his license should not be revoked. The petitioner appeared and filed an answer denying the material allegations of said charges and a trial was had on the issues as framed before the Board of Medical Examiners. At said hearing evidence both oral and documentary was presented to said board by both parties and the proceedings before the said board were taken down in shorthand. Thereafter, on July 1, 1942, the defendant board rendered and caused to be entered its judgment and determination revoking said license theretofore issued to this petitioner. On the 4th day of February, 1943, the petitioner commenced this proceeding in the Superior Court of the State of California in and for the City and County of San Francisco. In due time the appellants made a return and filed an answer to said petition for a writ of mandamus. Later a hearing was had on February 16, 1943, and thereafter the trial court being fully advised of the law and the facts made findings in favor of the petitioner and against the appellants. Thereupon the trial court directed that a peremptory writ of mandamus be issued directing appellants to cease and desist from any act tending to prevent petitioner from practicing medicine and surgery within this state; and directing them forthwith to make an order restoring petitioner's certificate theretofore issued authorizing him to practice as a physician and surgeon; and also ordering that said petitioner recover his costs and disbursements. From that judgment the appellants have taken this appeal.

The controversy presented to this court involves few questions of fact and they will be specifically set forth as we proceed. However, the controversy is a serious dispute as to the procedure in a mandamus case when the subject under attack is a determination of a board having statewide jurisdiction. (*Laisne* v. *California St. Bd. of Optometry,* 19 Cal. 2d 831 [123 P.2d 457] ; *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304] ; *Russell* v. *Miller,* 21 Cal.2d 817 [136 P.2d 318] ; *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P. 2d 425].) It should be noted that at the time of the trial, February 16, 1943, *Dare* v. *Board of Medical Examiners, supra,* and *Russell* v. *Miller, supra,* had not been decided.

Not to prolong this decision it may be stated that the appellants do not contend that the trial court violated any rule in the cases we have just cited except as will herein be noted.

Indeed, it is conceded that the trial court followed said rules with meticulous care.

Speaking of assignments of error, the appellants make one contention, "It is respectfully submitted that the trial court erred in permitting evidence additional to that considered by appellant board to be introduced at the hearing on the petition for writ of man'date. In this connection it is pertinent to observe that the trial court was greatly influenced by the testimony of Dr. Bolin, a witness who did not testify at the proceedings of the appellant board." In support of that contention the appellants state, "The opinions of the supreme court in the Dare, Russell and Sipper cases above cited indicate that evidence additional to that received by the administrative agency may be considered by the reviewing court only in the following instances: (1) where evidence has been offered and improperly rejected by the administrative agency; (2) where pertinent evidence was in existence at the time of the hearing before the administrative agency but could not have been at that time produced by the exercise of due diligence; and (3) evidence discovered subsequent to the hearing before the administrative agency." That is the appellants base their contention specifically on what is said by the Supreme Court in *Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790, pages 796-800 [136 P.2d 304]. However, it will be noted from a reading of said case that there was not before the court any question about evidence that was received which should not have been received. On the other hand, the identical question was before the court in *Laisne* v. *California St. Bd. of Optometry*, 19 Cal.2d 831 [123 P.2d 457]. In that case, as in this case, it was strongly urged that the trial court should not have received the additional evidence. On page 835 the court said: "If, in the instant case, the superior court in the mandate proceeding were limited to the evidence presented before the board, or if the findings of fact by the board were conclusive on the court, then the board would be exercising the complete judicial power reserved to the enumerated courts." Continuing, that court a little lower down on the same page, said: "This then would be an exercise of the complete judicial power that was contemplated by the framers of the Constitution, and appellant would be deprived of his constitutional right unless he had a right to go into a court of law and question the validity of that order by the introduction of any material evidence to prove that he did not commit the acts alleged." Then, on

page 843, the court quotes from *Drummey* v. *State Bd. of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848], and says: "It was there said at page 85: 'The findings of the board come before the court with a strong presumption of their correctness, and the burden rests on the complaining party to convince the court that the board's decision is contrary to the weight of the evidence.' Undoubtedly, the court in this reference to the 'evidence' contemplated not only the record of the proceedings before the board, but such additional evidence as either party desired to introduce before the trial court." It is clear that in the instant case the trial court did not err in receiving evidence which was not offered on the hearing before the defendant board.

 Hereinabove we referred to conflicts in the evidence. As we understand the appellants they do not claim that they are not bound by the findings of the trial court—except as follows: It is their claim that the trial court should not have received the testimony of Dr. Bolin and if it had not received such testimony there would be no conflict. Hence they argue that the reception of Dr. Bolin's testimony was error, that the record can be treated as though such testimony was not received and, under those circumstances, there was no conflict. However, we have shown above that the trial court did not err in receiving the testimony of Dr. Bolin. Moreover, as we view the record his testimony created a conflict as to certain factors and that it was the only evidence on certain other material factors.

Of course as to Mrs. Hope and also as to Mrs. Gribble, the defendants were bound to prove that both women were pregnant when Dr. Wyatt rendered services to them on the dates alleged in the complaint. On the witness stand both denied they were pregnant. Each had given birth to children and knew the symptoms of pregnancy but neither admitted she was pregnant. Miss Malone, the nurse who assisted Dr. Wyatt in performing said operations, gave testimony regarding what she claimed to have seen. She claimed that the doctor curetted the womb of Mrs. Hope. She testified that the doctor operated on Mrs. Gribble and removed a fetus which she said showed the form of a human being. She also testified that before the operation Mrs. Gribble stated to her that she was pregnant. All of those statements about the removal of a fetus were denied by Dr. Wyatt. Dr. Bolin, the witness men-

tioned above, testified that a fetus of an age of four weeks, the age of the one removed, would be the size of a buckshot and the nature of the substance could be ascertained only by the use of a microscope. It thus appears there were conflicts in the evidence, that the trial court has decided those conflicts against the appellants, and that a court of review may not disturb those findings.

Regarding the charge of disturbing the peace at Bieber, it was the theory of the defendants that under the record as made before the defendant board it was shown that the petitioner did, during his probation period, violate section 415 of the Penal Code, that such act was one of moral turpitude and therefore the petitioner was guilty of an act of unprofessional conduct. (Bus. & Prof. Code, § 2383.) The vice in that contention is that it assumes the offense of disturbing the peace is an act of "moral turpitude." That it is an act of turpitude may be conceded, however it is equally clear that it is not *ipso facto* an immoral act. (*In re Rothrock*, 16 Cal.2d 449, 456 [106 P.2d 907, 131 A.L.R. 226].) If and when it is claimed such an act is one of moral turpitude the trial court may inquire into such facts as show or tend to show the offense complained of was or was not an act of moral turpitude. (*In re Hatch*, 10 Cal.2d 147, 151 [73 P.2d 885].) But in the case before us such evidence was produced by the petitioner. Thereafter the court made findings that the offense alleged to have been committed at Bieber was not one of moral turpitude. Under well settled rules that finding is conclusive in a court of review.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 3, 1944. Gibson, C. J., Edmonds, J., and Traynor, J., voted for a hearing. Carter, J., did not participate therein. Appellants' petition to set aside order denying hearing was denied August 4, 1944. Edmonds, J., voted to grant petition.