[Civ. No. 20310. First Dist., Div. Two. Aug. 14, 1963.]

SOL M. STOUMEN, Plaintiff and Appellant, v. RUSSELL S. MUNRO, as Director of the Department of Alcoholic Beverage Control et al., Defendants and Respondents.

Morris Lowenthal and Juliet Lowenthal for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Charles A. Barrett, Assistant Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendants and Respondents.

AGEE, J.—Appellant holds a general on-sale liquor license for premises known as the Black Cat, located on Montgomery Street in San Francisco. An amended accusation filed before the Department of Alcoholic Beverage Control charged him, in Count I thereof, with violating section 25601 of the Business and Professions Code (keeping a disorderly house)[1] and, in Count II thereof, with violating section 24200 subdivision (e) of said code (resort for sexual perverts).[2]

A hearing officer took evidence and found that the allegations in both counts were true with the exception of three of the nine specifications set forth in Count I. His proposed decision recommended revocation of the license "on *each* of Counts I and II *severally and separately.*" (Italics ours.) The department, acting through its director, adopted this proposed decision and recommendation as its own. The Alcoholic Beverage Appeals Board affirmed.

---

[1]The statute reads as follows: "Every licensee, or agent or employee of a licensee, who keeps, permits to be used, or suffers to be used, in conjunction with a licensed premises, any disorderly house or place in which people abide or to which people resort, to the disturbance of the neighborhood, or in which people abide or to which people resort for purposes which are injurious to the public morals, health, convenience, or safety, is guilty of a misdemeanor."

[2]The statute reads as follows: "The following are the grounds which constitute a basis for the suspension or the revocation of licenses: . . . (e) Where the portion of the premises of the licensee upon which the activities permitted by the license are conducted are a resort for illegal possessors or users of narcotics, prostitutes, pimps, panderers, or sexual perverts. . . ."

Appellant then obtained an alternative writ of mandate from the superior court and a hearing before it was held thereafter. Before any decision was rendered, our Supreme Court decided *Vallerga* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 313 [1 Cal.Rptr. 494, 347 P.2d 909], which declared section 24200, subdivision (e), to be unconstitutional. On the authority of *Vallerga*, the superior court reversed as to Count II. It affirmed the department's decision as to Count I, discharged the alternative writ, and denied a peremptory writ. This appeal from the judgment followed. The correctness of the holding as to Count II is not in dispute.

*Vallerga* makes it clear that the unconstitutionality of section 24200, subdivision (e), does not vitiate the entire disciplinary order if the decision of the finder of fact can be upheld on any constitutional ground. (Pp. 318-320.) Count I of the accusation herein is based exclusively upon section 25601. No attack is made upon the constitutionality of this section. Rather, appellant attacks the validity of the department's decision as to Count I upon a number of other grounds.

*Adequacy of accusatory pleading.* Section 11503 of the Government Code provides in part: "The accusation shall be a written statement of charges which shall set forth in ordinary and concise language the acts or omissions with which the respondent is charged, to the end that the respondent will be able to prepare his defense."

The charges in Count I which were found to be true are alleged as follows: "Between January 21, 1955 and the date hereof [August 27, 1956], . . . the said licensee permitted or suffered the following acts to occur in the said premises: (a) Males kissing and caressing males. (b) Males engaging in lewd and indecent acts with other males. (c) Lewd and indecent conversations. (d) On or about May 12, 1956 Police Officer Daniel P. Howard was invited by Donald Miles, a patron, to engage in a lewd act. (e) On or about May 13, 1956 Agent Herbert L. Wagner was invited by William A. Schaefer, a patron, to engage in a lewd act. . . . (g) On or about July 14, 1956 agent Frederick Corti was invited by Robert Spencer, a patron, to engage in a lewd act."[3]

The principal objective of the law is to safeguard the licensee against an accusation which does not sufficiently en-

---

[3]The incident charged in (f) was found to have occurred outside of the licensed premises and not within view or hearing of the appellant or his employees; appellant was therefore exonerated as to this alleged incident.

able him to prepare his defense. (*Rolfe* v. *Munro*, 165 Cal. App.2d 726, 730 [332 P.2d 404]; *Burako* v. *Munro*, 174 Cal. App.2d 688, 691 [345 P.2d 124].) Adherence to technical rules of pleading is not required. (*Wright* v. *Munro*, 144 Cal.App. 2d 843, 848 [301 P.2d 997].) As stated by Mr. Justice Peters, in the case last cited: "In these administrative proceedings the courts are more interested with fair notice to the accused than they are to adherence to the technical rules of pleading. [Numerous citations.]"

In the instant case, it can hardly be said that appellant was not fully and fairly apprised of the charges with sufficient certainty to prepare his defense thereto.

After the department had put in its case before the hearing officer, appellant went right ahead with his defense without protest. In fact, his counsel stated: "I am willing to go ahead and present our case without waiting for any ruling on the motions, . . ." After three of appellant's witnesses had testified, the hearing was adjourned on November 30, 1956, and continued to a date mutually agreeable to respective counsel. The hearing was resumed on January 28, 1957, apparently without objection. No restriction was placed upon the number of witnesses to be called by appellant, and no showing was made that appellant was in any way hampered in presenting any rebuttal that he might have to any of the evidence introduced by the department two months before. As stated in *Burako* v. *Munro, supra*, at page 691, appellant was thus "afforded sufficient time, after presentation of the department's evidence, to secure any further refutation available to [him]. [He] cannot now complain."

*Sufficiency of the evidence.* Our inquiry is whether the findings with respect to Count I are supported by substantial evidence. (*Martin* v. *Alcoholic Beverage Control Appeals Board* (1959) 52 Cal.2d 238, 246 [340 P.2d 1]; *Rosales* v. *Department of Alcoholic Beverage Control* (1959) 171 Cal.App.2d 624, 625 [341 P.2d 366].) As stated in *Rosales,* "[i]t is clear that the department, in revoking the license 'on each of Counts I and II severally and separately,' considered revocation the proper penalty on either count alone." *Morell* v. *Department of Alcoholic Beverage Control,* 204 Cal.App.2d 504 [22 Cal.Rptr. 405], is to the same effect.

A summary of the testimony supporting the findings as to the charges in Count I which were found to be true follows.

Agent Johnson saw males kissing other male patrons on

April 27, 1956. This kissing took place at the bar while the bartender was behind the bar. Four male patrons, who were seated at the bar, were playing with other patrons' buttocks and putting their hands inside the trousers of other patrons.

On May 2, 1956, Johnson observed men seated at the bar with their arms around one another and caressing each other's backs and buttocks and two men were dancing together. A bartender was on duty behind the bar and a waiter was working between the bar and the tables.

On May 4, 1956, Johnson saw male persons at the bar hugging one another. Male patrons in other portions of the premises had their arms around one another and were stroking each other's heads. He heard a Negro male invite a white male to engage in an act of sexual intercourse with him, after which the two left the premises together.

Sergeant Whaley, United States Army, on duty with the Armed Services Police, visited the premises several times a month from January 1956 through August 1956. On these occasions he saw male patrons kissing and embracing each other and rubbing or playing with each other's legs and other parts of their bodies.

Agent Wagner was at the premises on the evening of May 12, 1956, and the early morning of May 13, 1956. He saw male patrons at the bar kissing each other. Another male patron seated at the bar, later identified as "Susie," struck up a conversation with him. After a short time, "Susie" began rubbing and stroking Wagner's back and neck and kissing him on the cheek, meanwhile calling him "darling." "Susie" introduced Wagner to three or four male patrons as his "date" and used other lewd language, the purport of which was to arrange for Wagner to participate in a "party" at Susie's residence. Another patron, William Schaefer, became friendly with Wagner. After a conversation in which Schaefer made many lewd suggestions, the latter asked Wagner to go with him to a hotel which was across the street for the purpose of engaging in a lewd act. All of the foregoing activity took place at the bar and two, sometimes three, bartenders were on duty behind the bar during this period.

Agent Posey corroborated much of the testimony of Wagner as to the lewd conduct and incident conversations seen and heard by him. One example will suffice. "Susie" was displaying a ring on the second finger of his left hand, saying,

"I'm getting married next month, I'm going to be a June bride." However, "Susie" explained that he could go out "with whomever I choose until that time." Then followed the indecent proposals alluded to above. During this time "Susie" was showing his "engagement" ring to other patrons as they came in and telling them about the intended "marriage."

Agent Madsen visited the premises on May 25, 1956, and observed two male patrons at the center of the bar. The bartender was behind the bar. One of the males had his arm around the other and was arranging his clothing. The latter was rubbing the former's head. The bartender greeted two male patrons who entered with the salutation, "Hello, girls, how's your [word indicating anus]?" Then followed more lewd language by the bartender and a pantomime by him of the act of fellatio. Other allusions to unnatural sexual practices were made by other male patrons.

Officer Howard was at the premises on May 12, 1956, about 1:30 a.m. when appellant himself was behind the bar. The piano player, one Donald Miles, got into a conversation with him and asked if he had a date that night. When Howard answered that he did not, Miles proposed that they go to Howard's home and there engage in whatever lewd acts Howard might desire.

Agent Corti visited the premises on July 14, 1956. A male patron seated at the bar, one Robert Spencer, winked and beckoned to him. In the conversation that followed, Spencer offered to commit the act upon him which is denounced by section 288a of the Penal Code.

The three witnesses called by appellant before the two months' adjournment of November 30, 1956, were Anderson, Schaumburg, and Thompson.

Anderson testified that male patrons who "carried on" were asked to desist or else leave the premises. A portion of his testimony is as follows: "Q. What were they doing when they 'carried on'? A. Well, they might be calling each other names or hugging. Q. What kind of names? . . . A. . . . Dear, or Mary or Sally, or whatever. Q. And they might be kissing each other? A. Attempting to. Q. Caressing each other in some manner? A. Yes. Q. These were males? A. Yes."

Schaumburg admitted seeing male patrons kissing and caressing each other and also dancing with each other. He stated that this conduct was always stopped when observed by those

in charge. When asked if he had observed lewd and indecent activities on the premises, he stated: "In general, no."

Thompson worked at the Black Cat up to November 28, 1955. He. testified that he had seen male patrons kissing and caressing each other and, on one occasion, one male "feeling" another. However, he stated that this type of conduct was stopped whenever it was observed.

The hearing resumed on January 28, 1957. Appellant produced a Miss Jacob as the only witness, other than himself. She was a regular patron and sometimes washed dishes there and helped out whenever needed. She stated that the premises had a bad reputation as a meeting place for homosexuals but that "we were just determined to prevent as much of it as we possibly could among ourselves, and there are certainly enough of us to put a stop to anything that might damage Mr. Stoumen's reputation and business, and especially because we want to keep the place."

This witness repeatedly testified to the awareness of the appellant and his employees of such homosexual activity but was vehement in her insistence that it was promptly squelched upon being noticed. One example of such testimony is as follows: "Q. In other words, you have seen occasions where somebody begins some sort of conduct, and the employees would stop them immediately? A. Yes, sir. On every occasion."

Appellant then took the stand. He denied having seen any of the type of conduct testified to by the witnesses called by the department. He testified that "I've seen them starting to make moves, . . . If I observed anything that looked like it might be out of line I'd tell them to cut it out."

It is unnecessary to set forth any further testimony on the same subject. In our opinion, the allegations in Count I which were found to be true are supported by substantial evidence. The record is thus ample to sustain the order of revocation based upon Count I alone.

Evidence of the same type of activity as that involved herein is related in *Kershaw* v. *Department of Alcoholic Beverage Control,* 155 Cal.App.2d 544 [318 P.2d 494] ; *Nickola* v. *Munro,* 162 Cal.App.2d 449 [328 P.2d 271] ; *Benedetti* v. *Department of Alcoholic Beverage Control,* 187 Cal.App.2d 213 [9 Cal.Rptr. 525], and *Morell* v. *Department of Alcoholic Beverage Control,* 204 Cal.App.2d 504 [22 Cal.Rptr. 405]. In each of these cases, the sufficiency of the evidence was in

issue on appeal and in each the revocation of the license involved was upheld.

*Sufficiency of findings in "Proposed Decision" of hearing officer.* These findings were "stated in the language of the pleadings," as provided in section 11518 of the Government Code. ■ The rule is stated in *Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, at page 873 [206 P.2d 355]: "Administrative findings may be general as long as they satisfy the dual requirements of making intelligent review by the courts possible and apprising the parties of the basis for administrative action." (See also, 2 Cal.Jur.2d 268 et seq., Administrative Law, § 163.) ■ The findings may be made in the language of the accusation. (*Webster* v. *Board of Dental Examiners* (1941) 17 Cal.2d 534, 544 [110 P.2d 992].) This was done in the instant case.

■ Appellant further contends that there should have been a specific finding as to whether the misconduct on the premises, as described in findings (a), (b), (c), (d), (e), and (g), occurred within the conscious presence of appellant or his employees. The contention is without merit.

The findings of fact proposed by the hearing officer and adopted by the department commence as follows: "It is true that between January 21, 1955, and August 27, 1956, the above named respondent [appellant herein] kept, permitted to be used and suffered to be used, . . . a disorderly house. . . ."

It has been held that, to sustain the charge of having permitted or suffered the acts in question to take place on the licensed premises, it is not necessary to prove knowledge of such conduct. In *Morell* v. *Department of Alcoholic Beverage Control*, 204 Cal.App.2d 504 [22 Cal.Rptr. 405], the court stated at pages 511-512: "Appellants were charged with and found guilty of violating section 25601, as a result of which grounds existed under section 24200, subdivision (b) for the revocation of their license. Section 25601 does not provide that the condition of the licensed premises denounced by it must be knowingly created. No proof of knowledge by the licensee or his agents of the acts proscribed by the section is necessary, it being sufficient that the evidence show that such acts took place on the licensed premises. [Citations.] . . .

"Nor do we find any requirement of knowledge or notice in section 24200, subdivision (b) through which section 25601 operates to establish grounds for revocation." (See also

*Benedetti* v. *Department of Alcoholic Beverage Control,* 187 Cal.App.2d 213 [9 Cal.Rptr. 525]; *Mercurio* v. *Department of Alcoholic Beverage Control,* 144 Cal.App.2d 626 [301 P.2d 474].)

Appellant next contends that the department's revocation order was made *solely* on the invalid ground that the premises were used as a ''resort for sexual perverts.'' The basis of this contention is that the department's legal staff, in preparing the schedule of matters to be acted upon by the department, had so described the ''nature of hearing'' as to *both* counts. However, both counts were *also* described in the schedule as being based upon the charge that the '' [p]remises have been operated in a disorderly manner.'' This is in accord with the wording of section 25601. Hence, at best, it can only be said that there is a conflict in the two descriptions contained in the schedule.

The record shows that ''on March 1, 1957, the Department of Alcoholic Beverage Control adopted the attached proposed decision [of the hearing officer] as its decision . . .'' We think that the wording of this proposed decision is determinative of what the department's revocation order is based upon.

The hearing officer's ''Proposed Decision'' included a ''Determination of Issues Presented.'' Therein it is stated that, in addition to the provisions of article XX, section 22, of the California Constitution, and section 24200 subdivision (a) of the Business and Professions Code, ''additional grounds for suspension or revocation of the license exist under section 24200(e) of said Code, as charged in Count II, and that additional grounds for suspension or revocation of the license exist under section 24200(b) of said Code for violation of *section 25601* of said Code, *as found under Count I.''* (Italics ours.) This language is so clear that it cannot be seriously argued that the department considered its revocation order to depend solely on a violation of section 24200 subdivision (e).

Appellant contends that a ''determination of the issues'' by the hearing officer has no place in his proposed decision and it should be ignored. However, section 11517 subdivision (b) of the Government Code provides that the hearing officer ''shall prepare a proposed decision *in such form* that it may be adopted as the decision in the case.'' (Italics ours.) The decision of the department is required to contain ''findings of fact, a determination of the issues pre-

sented and the penalty, if any." (Gov. Code, § 11518.) Hence, "a determination of the issues presented" was properly included in the hearing officer's "proposed decision."

The trial court made an express finding that the department based its decision on "the proposed decision of the hearing officer, *including* the proposed findings of fact, *proposed determination of issues presented* and the proposed penalty recommended by the hearing officer." (Italics ours.)

The record is thus clear that the department's revocation order, insofar as Count I is concerned, is based upon a violation of section 25601, not section 24200 subdivision (e).

*Entrapment.* This issue pertains only to the incidents in which agents were solicited by patrons or the piano player to engage in acts of sexual perversion. It does not pertain to conduct of patrons which did not involve the agents in any way or to conversations of patrons and employees in which the agents did not participate.

The record is without conflict that the intent to commit such acts of perversion originated in the minds of those who made the proposals to the agents. The most that can be said is that the agents afforded those on the premises the opportunity to solicit them. In each instance of solicitation, the initiative was taken by the individuals, Miles, Schaefer and Spencer.

Assuming that the defense of entrapment is available in this proceeding (see *Harris* v. *Alcoholic Beverage Control Appeals Board,* 197 Cal.App.2d 182, 185-186 [17 Cal.Rptr. 167]), such defense has no support in the record. (See *People* v. *Benford,* 53 Cal.2d 1, 10 [345 P.2d 928]; *People* v. *Sweeney,* 55 Cal.2d 27 [9 Cal.Rptr. 793, 357 P.2d 1049]; 1 Witkin, California Crimes 168, Defenses, § 176.)

*Adoption by department of proposed decision of hearing officer without reading the record.* The department is permitted to do so under section 11517, subdivision (b), of the Government Code.

Appellant argues that this procedure is in violation of due process of law because the actual decision is being made by the administrative agency without reading or otherwise familiarizing itself with the record.

This issue was raised in *Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384 [184 P.2d 323], and decided adversely to appellant's position herein. Directly applicable is the recent decision of *Dami* v. *Department of Alcoholic Beverage Control* (1959) 176 Cal.App.2d 144 [1 Cal.Rptr. 213].

The due process argument as related to an administrative agency adopting its hearing officer's proposed decision without reviewing the record has also been rejected in the following recent cases: *Strode* v. *Board of Medical Examiners* (1961) 195 Cal.App.2d 291, 297-298 [15 Cal.Rptr. 879]; *Kramer* v. *State Board of Accountancy* (1962) 202 Cal.App. 2d 163, 174-175 [19 Cal.Rptr. 226]; *Bernstein* v. *Board of Medical Examiners* (1962) 204 Cal.App.2d 378, 384-385 [22 Cal.Rptr. 419]. In both *Strode* and *Bernstein,* a petition for a hearing by the Supreme Court was denied.

Appellant also complains that a copy of the hearing officer's proposed decision was not served upon him or his attorney *prior* to its adoption thereof by the department. In *Dami* v. *Department of Alcoholic Beverage Control* (1959) 176 Cal.App.2d 144, 154 [1 Cal.Rptr. 213], it was held that neither due process nor section 11517 subdivision (b) required this to be done. (Cf. *Strode* v. *Board of Medical Examiners, supra,* p. 296.)

*Denial of appellant's motion for a new trial.* This motion was made upon two grounds, (1) newly discovered evidence and (2) insufficiency of the evidence. The latter ground has already been discussed above.

The "newly discovered evidence" is set forth in the affidavits of appellant and his counsel filed in support of the motion. Appellant contends that these affidavits prove that "on March 17, 1960, Feinberg [who had appeared as the attorney for the department at the administrative hearing] offered, and appellant and his counsel accepted and entered into, a settlement and adjustment of the pending litigation on the basis of an arrangement for reducing the penalty from revocation to a maximum of sixty days' suspension . . ." At the time of the alleged settlement, Feinberg had become the North Coast Area Administrator for the department.

The status of the litigation then was that the superior court had rendered its decision and filed a memorandum opinion but findings had not been settled. The department's counsel in the court action was the Attorney General of California, by Charles A. Barrett. Appellant does not claim that any "settlement" was made through such counsel or that they had any knowledge thereof.

Appellant's position is that the alleged "settlement and adjustment" was made under the provisions of section 23087 of the Business and Professions Code. This section provides that, whenever any dispute between the department

and a licensee is pending before a court of record and the parties agree upon a settlement or adjustment thereof, such court "shall upon the stipulation by the parties that such an agreement has been reached, remand the matter to the department." Section 24210 of the same code allows the department to reduce the penalty upon a reconsideration thereof.

Such a stipulation was never presented to the court and no application for an order remanding the dispute to the department was ever made.

Section 23087 requires that it is first necessary in order to invoke its provisions, that "the *parties* to such a dispute agree upon a settlement or adjustment . . ." (italics ours). Appellant recognized that any agreement embodying the settlement which he claims was made with Feinberg would have to be executed by the department, acting through its director.[4]

Accordingly, on March 21, 1960, appellant's counsel wrote a letter to Malcolm E. Harris, as director of the department, in which he made the following offer: "On behalf of the licensee, Sol M. Stoumen, we are hereby *proposing* that if the Department will give favorable consideration to modifying the decision (that the license be revoked) by reducing the penalty, our client *would be willing* to accept a thirty-day suspension of his license and to dismiss the Superior Court proceeding and thus waive his rights to press that proceeding and to appeal from any adverse decision that may be entered in the Superior Court action." (Italics ours.)

The letter covers nine pages of the transcript. It makes no reference whatsoever to any claim that a settlement had been agreed upon by Feinberg or anyone else connected with the department. The last sentence thereof is as follows: "We would appreciate having your response to this *proposal* at your earliest convenience." (Italics ours.) In other words, appellant was *attempting* to make a settlement. He had not already made one, at least not one that was binding on the department.

The letter was received by Harris and forwarded to Feinberg for his recommendation. No formal action was taken in response to appellant's proposal until January 6, 1961, when

---

[4]Section 23050 of the Business and Professions Code provides in part as follows: "The department shall be administered through a civil executive officer who shall be known as the Director of Alcoholic Beverage Control."

Harris informed appellant in writing that he had determined that revocation was the proper penalty.

The Attorney General had given appellant's counsel an open stipulation that he need not prepare objections to the findings proposed on behalf of the department or counter findings until notified to do so. On September 19, 1960, such notice was given. Appellant says that it was in this manner that he learned that Feinberg had "disavowed and repudiated the settlement arrangement."

Appellant's counsel thereupon telephoned Feinberg to ask why said notice had been sent. The former's affidavit states: "In this telephone conversation, Mr. Feinberg stated that it was he who had asked the Attorney General's Office to send the notice to affiant to 'get in' the petitioner's objections and counter-findings; that he had advised petitioner, in the last conversation with him shortly before, that the best that he (Feinberg) could do would be to 'allow' petitioner Sol Stoumen to sell his Black Cat liquor license; that the Black Cat had become a 'symbol'; that he, Mr. Feinberg, 'was willing to delay the Black Cat case while the Castaways case was pending, because Stoumen was helping us'; that he had never promised 'Sol' more than that; . . ."

On October 10, 1960, appellant's counsel went to Sacramento to see the director and was informed by him that he, the director, had never even heard of the alleged settlement agreement.

The "help" given by appellant to the department in connection with the "Castaways case" was initiated by appellant on February 19, 1960, when he went to Feinberg's office. This was the *next day after* the superior court had made and filed its memorandum decision against appellant.

Appellant informed Feinberg that the "Castaways," a so-called "gay" bar, was paying $150 per month to one Cardellini, an agent of the department, "to ensure that the Department of Alcoholic Beverage Control would 'keep the heat off' of the Castaways premises." This brought on an investigation of Cardellini by the department.

Appellant states that he was the "financial advisor" to the owners of said "Castaways." He relates that he was given marked money and equipped with a "walkie-talkie," so that enforcement officers could listen in on any conversation between himself and Cardellini. The latter did not show up at the "Castaways" on or about March 1, 1960, as expected.

Appellant alleges that he reported this failure of the "trap" to Feinberg in the "middle of March, 1960," and that Feinberg told appellant to "wait until April and make a second effort to nail Mr. Cardellini."

It was at this March conference in Feinberg's office that Feinberg is alleged to have "stated to affiant [appellant] that something could be worked out by way of a reduction in the penalty assessed against affiant in the pending license revocation proceedings."

On May 2, 1960, Cardellini was caught "red-handed" taking $150 in marked money from one of the owners of the Castaways. He was convicted on September 18, 1960, of a violation of section 70 of the Penal Code (accepting a "gratuity").

Appellant now argues that the department should be estopped to deny him the reward which he claims was agreed to by Feinberg in return for "putting the finger" on Cardellini. However, he has never claimed that Harris, the director, ever made any such an agreement or knew anything about one. Appellant does not claim that there was anything in the conduct of Harris that misled him to his detriment. He knew that Harris was the one who had to approve any settlement made by the department. He claims, instead, that he relied upon Feinberg's assurance that Harris would accept Feinberg's favorable recommendation on the proposal contained in appellant's letter of March 21, 1960, to Harris.

In *Joseph George, Distributor* v. *Department of Alcoholic Beverage Control,* 149 Cal.App.2d 702 [308 P.2d 773], the court stated at pp. 712-713: "[W]here one acts with full knowledge of plain provisions of law, and their probable effect upon facts within his knowledge, especially where represented by counsel, he can neither claim (1) ignorance of the true facts or (2) reliance to his detriment upon conduct of the person claimed to be estopped, two of the essential elements of equitable estoppel."

The foregoing excerpt from *George, supra,* was quoted with approval by our Supreme Court in *California Cigarette Concessions, Inc.* v. *City of Los Angeles,* 53 Cal.2d 865 [3 Cal. Rptr. 675, 350 P.2d 715]. Therein the court stated, at page 870: "It must be presumed that plaintiff's attorney . . . knew that authority to approve or reject the claim was vested in the city council rather than the city clerk, who could merely make a recommendation." In that case the city clerk had written a letter to plaintiff's attorney upon which plaintiff

claimed to rely. The court refused to apply the doctrine of estoppel.

In the instant case, it is clear that appellant knew that the agreement for which he contends would have to be approved by Harris in order to be binding upon the department. It is equally clear that the "reliance" of which appellant speaks was not upon any statement or conduct of Harris but was upon the alleged *opinion* of Feinberg that Harris would act in accordance with Feinberg's recommendation. We do not think that such reliance, even if true, should call for the application of the doctrine of equitable estoppel.

A second ground for not applying equitable estoppel in the instant case is one of public policy. The superior court had reviewed the disciplinary proceedings, including the appeal before the Alcoholic Beverage Appeals Board, and had announced its decision to uphold the license revocation. *Thereupon*, the licensee attempted to make a "deal" for himself based on something which has *nothing to do with the merits of these proceedings*. He offered to help the department "nail" one of its agents, Cardellini, in return for which the department was to obtain a remand of the instant action from the superior court back to the department so that a reduction in the penalty might be made by the department.

It is not even claimed that the department's director knew anything about any such "deal," let alone having approved it. We are aware that " [t]he once strict rule against invoking equitable estoppel against the state or its agencies has been somewhat relaxed, . . ." (*Joseph George, Distributor* v. *Department of Alcoholic Beverage Control,* 149 Cal.App.2d 702, 713 [308 P.2d 773]).

However, we are of the opinion that such relaxation should not be permitted in the instant case. In other words, assuming that appellant could prove a "deal" such as claimed by him, it should not be held to be enforceable.

As stated in *City of Imperial Beach* v. *Algert* (1962) 200 Cal.App.2d 48, 52 [19 Cal.Rptr. 144]: "The courts of this state have been careful to apply the rules of estoppel against a public agency only in those special cases where the interests of justice clearly require it. [Citations.] However, if such exceptional case does arise and if the ends of justice clearly demand it, estoppel can and will be applied even against a public agency. Of course, the facts upon which such an estoppel must rest go beyond the ordinary principles of estoppel and each case must be examined care-

fully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public interest may be mulcted or public policy defeated."

In this case, the facts amply support the order revoking Stoumen's license and we think that public policy would be defeated if such penalty were to be avoided on the basis that Stoumen had informed on Cardellini and had assisted in securing his conviction.

In further support of the trial court's denial of the motion for a new trial, we cite appellant's failure to comply with subdivision 4, section 657, of the Code of Civil Procedure, which requires that "newly discovered evidence" must be evidence which the mover "could not, with reasonable diligence, have discovered and produced *at the trial.*" (Italics ours.)

The proffered evidence (alleged agreement) came into existence *after* the submission of the case for decision by the superior court but *before* any findings had been signed. "It is quite clear that, when a case requiring findings is tried, the trial is not complete but is still in process of determination until findings are signed and filed." (*Reimer* v. *Firpo,* 94 Cal.App.2d 798, 800 [212 P.2d 23].)

Appellant avers in his affidavit that Feinberg had told him not to disclose the "deal" of March 17, 1960, to anyone. However, appellant states that on September 19, 1960, Feinberg "disavowed and repudiated the settlement arrangement." This certainly released appellant from any promise of silence. The trial was still pending. As held in *Haupt* v. *LaBrea Heating & Air Conditioning Co.* (1954) 125 Cal.App.2d Supp. 888, 889 [270 P.2d 125], the submission of the case for decision does not put an end to the trial.

Appellant waited from said September 19, 1960, to April 17, 1961, before disclosing to the court the "newly discovered evidence." This was done in connection with the motion for a new trial. The findings and judgment had been signed on March 17, 1961.

At any time before March 17, 1961, appellant could have moved to reopen the case for the taking of additional evidence. No effort was made to do so. Such a motion is not an unusual or obscure one, but is well recognized. The trial court has discretion to permit the reopening of a case after the close of the evidence and the submission of the case for decision, even though considerable time may have elapsed since submission of the cause for decision. (48 Cal.Jur.2d, Trial, § 112, p. 156.)

 For the foregoing reasons set forth above, it is our opinion that the denial of the motion for a new trial was well within the discretionary power of the trial court. (36 Cal. Jur.2d, New Trial, § 13, pp. 145-150.)

*Superior Court Hearing.* This lasted for three days. Appellant's objective was to discredit the department. He called four witnesses, all from the department. The department called none. Extensive findings were made, all of which are supported by substantial evidence. Paragraphs XVIII through XXII cover this phase of appellant's "attack."[5]

---

[5] "XVIII That it is not true that in its actions pertaining to and culminating in the aforesaid decision of revocation of petitioner's license, the Department has been guilty of arbitrary and discriminatory action or prejudicial misconduct against petitioner, nor had the Department a preconceived determination to deprive petitioner of his license nor has the Department employed arbitrary or illegal means to accomplish this objective; nor has petitioner been deprived of due process of law and it is not true that petitioner has been prejudiced through the entire proceedings, or otherwise.

"XIX That it is not true that the Department has had, or now has a hatred, prejudice or bias against petitioner longstanding, or otherwise, or deep-seated or otherwise, nor is it true that any said hatred, bias or prejudice has been carried into the Department of Alcoholic Beverage Control from its predecessor the State Board of Equalization, or the employees, agents or officials, or any of them, who were transferred to and continued to be employed by the Department; it is not true that any prejudice, hatred or bias stemmed from the 1949 proceedings against petitioner or otherwise; that it is not true that the Department has harassed petitioner; it is not true that hatred, bias or prejudice existed against petitioner by the Department, its employees, agents or officials in the manner alleged in paragraph XXII [of the petition] or in any other manner.

"XX That it is not true as alleged in paragraph XXIII [of the petition] or otherwise, that the Department prejudiced the case against petitioner or made a preconceived determination to deprive petitioner of his license, nor is it true that the Department employed arbitrary or illegal means, including inducement, entrapment, enticement and actual solicitation of patrons, or intentionally deprived petitioner of any opportunity to secure evidence in his defense; that it is true that the Department used those means inherent in a commendable and zealous effort to use the processes of law to discipline licenses [sic] of the Department who were maintaining premises inimical to public welfare and morals.

"XXI The hearing officers of the Department of Alcoholic Beverage Control hold hearing officer conferences at which meetings important decisions of the Alcoholic Beverage Control Appeals Board, the Superior Courts of the State of California, the District Court of Appeal decisions and Supreme Court decisions affecting alcoholic beverage control matters are discussed in order that the hearing officers may be familiar with proper legal interpretations necessary for future hearings. At said hearing officer conferences theoretical and abstract questions of law and evidence are discussed and incidentally policies and attitudes of the Department toward specific violations are discussed. At said hearing officer conferences cases pending before the hearing officers are not

The record and briefs herein are voluminous. (Appellant's opening brief contains 307 pages, plus an appendix of 102 pages.) Nevertheless, the omission in this opinion of any additional contentions raised by appellant is solely because we do not believe they merit discussion.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied September 11, 1963, and appellant's petition for a hearing by the Supreme Court was denied October 9, 1963.

---

discussed. And the court finds that it is true that the Department has held joint conferences or briefing sessions for hearing officers, Department attorneys and employees of the Department, and at said briefing sessions the hearing officers are advised with respect to the policies and attitudes of the Department regarding numerous matters affecting the actions of the Department; it is not true that the hearing officers are instructed as to the manner of deciding any particular case; it is not true that the hearing officers lack independence of the Department, or were or are subservient to the prosecuting functions of the Department in this or any other case referred to in these proceedings, nor is it true that the hearing officers assigned by the Department to hear cases pending before the Department were or are influenced and biased against licensees charged by the Department with improper conduct or violation of law, nor is it true that petitioner was deprived of a fair or impartial hearing before the hearing officer.

"XXII That it is not true that at any time respondent Russell S. Munro [former Director] considered petitioner to be an 'enemy', 'bum' or 'Crook' nor has the Department with respect to the petitioner abused its discretion, gone beyond the objectives of its obligation under the Constitution and the laws, nor punished petitioner without regard to the threat of the violation to the public welfare and morals; that at no time was petitioner deprived of the objective, judicial, impartial and fair exercise of judgment or discretion on any proposed recommendation or finding of a hearing officer in this or any other case."