[Civ. No. 29072. Second Dist., Div. Four. Oct. 26, 1966.]

ALBERT R. SCHOENEN, Plaintiff and Appellant, v.
BOARD OF MEDICAL EXAMINERS OF THE
STATE OF CALIFORNIA et al., Defendants and Re-
spondents.

Copelan & Warren, Joseph B. Copelan and Earl Warren, Jr., for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Nicholas C. Yost, Deputy Attorney General, for Defendants and Respondents.

FOX, J.*—This is an appeal from a judgment denying appellant's petition for writ of mandate to compel the Board of Medical Examiners to set aside its decision and order revoking appellant's certificate and license to practice medicine and surgery.

In February 1964 the board, through its executive secretary, caused to be filed and served upon appellant, a licensed physi-

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

cian and surgeon, its accusation charging him with unprofessional conduct as follows: A. During the two-year period terminating on or about January 7, 1964, appellant Schoenen agreed and attempted to procure and did procure one or more criminal abortions each month. B. On January 7, 1964, appellant Schoenen offered and agreed to procure a criminal abortion on a person known to him to be Sandra Douglas. C. On May 22, 1963, appellant Schoenen attempted to perform and performed a criminal abortion on a person known to him as Judy P. D. On each of the occasions of the performance of said criminal abortions, appellant Schoenen administered to the victim isonopecaine (Demerol), a narcotic drug regulated by the statutes of this state, but failed to make the record of dispensation required by Health and Safety Code section 11225.

In response to said accusation Schoenen filed a notice of defense and after due notice a hearing was held on August 28, 1964, on the allegations of said accusation. Schoenen made no objection to the form of the accusation. The hearing was held before the board, 10 members being present with Alfred J. McGuire, hearing officer of the Office of Administrative Procedure, presiding. Schoenen appeared at said hearing in person and was represented at the hearing by his attorney, Joseph B. Copelan, Esq.

At the commencement of said hearing a stipulation was offered by counsel for both parties that each and all of the allegations of the accusation were true. The hearing officer then inquired of appellant concerning his understanding of the significance of the stipulation. Preliminarily, however, the hearing officer informed Schoenen that it was his custom before he accepted such a stipulation to advise the accused that before he answered any of the hearing officer's questions he had the absolute right to consult with his attorney. The following colloquy then took place between the hearing officer and Schoenen: "HEARING OFFICER: . . . Doctor, you heard the counsel say that they have stipulated? DR. SCHOENEN: Yes, Sir. HEARING OFFICER: Would you define the word 'stipulate' for me? . . . DR. SCHOENEN: It is an agreement that the allegations are correct and true. HEARING OFFICER: Do you understand that the stipulation is in lieu of any other evidence? DR. SCHOENEN: Yes, sir. HEARING OFFICER: Do you also understand that, based upon the stipulation alone, your license to practice medicine and surgery in California may be disciplined and that the discipline may be a revocation or suspension, or such other penalty that this Board, in its dis-

cretion, may determine? DR. SCHOENEN: Yes, sir. HEARING OFFICER: And with that knowledge, are you desirous that the Board accept the stipulation? DR. SCHOENEN: Yes, sir.''

The stipulation was then received in evidence, and the complainant rested its case. Schoenen thereupon put on his evidence in mitigation, which consisted of three character witnesses (two of whom were medical doctors), two letters regarding his character, and his own testimony. In his testimony Schoenen again admitted the substantive charges of the accusation in the course of explaining the circumstances surrounding each charge.[1]

At the conclusion of the presentation of the evidence and the presentation of argument by Schoenen's attorney, the Board of Medical Examiners went into executive session to consider and deliberate on the matter. At the conclusion of the executive session (on August 28, 1964) the board orally advised Schoenen that it had found him guilty of unprofessional conduct as charged and that as a result his certificate to practice medicine and surgery would be revoked.

In response to this oral advice, Schoenen's attorney, on September 14, 1964, wrote a letter to the board requesting a rehearing and reconsideration. The pertinent portion of that letter stated: ''It is respectfully requested that a rehearing and reconsideration be granted in the above entitled matter and the Board consider additional evidence in this matter, including the testimony of the investigators for the Medical Board.'' No suggestion was made as to the subject matter with respect to which the investigators might be expected to testify. On October 13, 1964, Schoenen was advised by letter from the board that his request was denied.

On October 1, 1964, the board issued and served on Schoenen its decision and order in the case wherein it found that he

---

[1]Schoenen testified that he charged from $50 to $300 per abortion; that he committed abortions over a period of approximately two years; that he had outstanding $29,000 in liabilities on his medical facilities; that the practice he purchased was going downhill; that he felt the women he aborted needed the particular operation. He further stated that performing abortions tended to increase the opportunity to do them; that he does not intend to perform any more abortions; that he turned down 10 people for every abortion performed; that for him abortions were an ''economic matter''; that his financial situation had not been improving; that people came from various areas for abortions; that he committed abortions to supplement his income; that he had no considerations other than economic to offer for carrying on this type of practice; that he was going to abort one Sandy Douglas the day he was arrested; that Sandy Douglas was not pregnant; that he negotiated a fee of $300 to abort Sandy Douglas; and that he will never again perform an illegal abortion.

had committed the acts of unprofessional conduct with which he had been charged and which he had admitted. The board determined that he was guilty of unprofessional conduct pursuant to the provisions of the Business and Professions Code sections 2377 and 2391.5. The board ordered appellant's certificate authorizing him to practice medicine and surgery in California to be revoked effective November 2, 1964. Appellant did not file any further request for rehearing and reconsideration after receiving notice of the board's formal action.

At the hearing on the mandamus proceeding, the court considered the transcript of the administrative hearing, the testimony of the reporter who prepared the transcript, an affidavit of Schoenen dated October 20, 1964, and the declaration of Conrad Lee Klein, attorney for the board, dated December 2, 1964. Schoenen made an offer of proof stating that he would show by his own testimony that money was not the primary reason for his performing abortions; that he never performed an abortion unless he believed the woman needed one; that he charged between $50 and $300 for abortions; that he refused to perform an abortion in nine out of ten cases; that in each and every case there were reasons for his performing the operation in addition to his own economic need. Schoenen claimed that he had not brought these matters before the board because its investigators promised him that if he told "the complete and absolute truth," the board would be lenient with him. The offer of proof was rejected. After argument and further consideration of the matter, the writ was denied.

In seeking a reversal appellant's principal contention is that the trial court committed prejudicial error in refusing to admit two classes of evidence: (1) that the board's investigators had represented to him that if he were honest and cooperative and told the truth, the board would take this into consideration and be lenient in its determination and decision, and (2) additional evidence by way of mitigation.

In making this argument appellant fails to fully appreciate that the scope of the hearing in administrative mandamus, though still referred to as a "trial de novo," is such a trial only in a limited and qualified sense, and partakes more of the nature of a review than of an unlimited new trial. (*Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304]; *Russell* v. *Miller*, 21 Cal.2d 817 [136 P.2d 318]; *Sipper* v. *Urban*, 22 Cal.2d 138 [137 P.2d 425].)

Case law has developed three principles relative to the rejection or admissibility of evidence in an administrative

mandamus proceeding: (1) if it should appear from the record that "incompetent evidence had been received by the board, the complaining party should not be foreclosed from objecting on the trial to its admissibility"; (2) "[i]f the board had improperly refused to entertain admissible evidence the litigant should not be forclosed from offering it at the trial"; and (3) "[i]f additional evidence not included in either category . . . be sought to be introduced by a party, the court has the right to receive it upon a showing that, in the exercise of reasonable diligence, it could not have been introduced before the board." (*Dare* v. *Board of Medical Examiners, supra,* at p. 799; *Id.,* at pp. 805-809 (concurring and dissenting opinion of Traynor, J.); *Ashdown* v. *State of Calif. Dept. of Emp.,* 135 Cal.App.2d 291, 297 [287 P.2d 176]; *West Coast etc. Co.* v. *Contractors' etc. Board,* 72 Cal.App.2d 287, 298 [164 P.2d 811]; see: Judicial Council of California, Tenth Biennial Report, 141 N. 60; Kleps, *Certiorarified Mandamus Reviewed: The Courts and California Administrative Decisions—1949-1959,* 12 Stan.L.Rev. 554, 557.) Passage of section 1094.5, Code of Civil Procedure (enacted with the Administrative Procedure Act in 1945) subsequent to the *Dare* decision, largely codified the rules on admissibility of that decision except that it did not include the rule that impeaching evidence could be introduced in the trial court. (*Mast* v. *State Board of Optometry,* 139 Cal.App.2d 78, 88-89 [293 P.2d 148].)

■ Under these rules the court did not err in refusing to hear either segment of the proffered evidence.

It is quite apparent that rules one and two, quoted above, have no application whatever to the admissibility of the proffered evidence relative to promises of leniency by the investigators. Appellant is therefore left relying on the principle that additional material evidence not included in either of the other two categories is admissible, if it could not, with reasonable diligence, have been introduced before the agency. Such reasonable diligence is completely absent. Appellant proffered no evidence to the agency in support of his later charge that the investigators of the board promised him leniency if he told the board the complete truth concerning the accusations made against him. He makes the explanation now that he could not present the evidence at the agency level because of the "stultifying effect of the promises of leniency made by the investigators." This explanation is wholly inadequate to relieve him of his failure to exercise reasonable dili-

gence in getting this matter before the administrative agency. It will be recalled that on the date of the hearing, August 28, 1964 (at the conclusion thereof), the board went into executive session to consider appellant's case following which it orally advised appellant that it had found him guilty as charged, and that it would revoke his certificate to practice. The board's written decision was dated October 1, 1964, by its terms to become effective November 2, 1964, in accordance with the 30-day from mailing to effectiveness provision of Government Code, section 11519, subdivision (a).

Government Code, section 11521, permits reconsideration by the board on petition of any party. Appellant took advantage of this. On September 14, 1964, his counsel addressed a letter to the board requesting reconsideration. This was appellant's opportunity to make his allegation of the promises of leniency, yet he made none. After notice of the board's written decision of October 1, 1964, such alleged promises could no longer have any ''stultifying effect'' on his actions. He knew officially as of that date that his license was to be revoked, and that he had not received the leniency which he now claims had been promised by the investigators of the board. It is therefore apparent thereafter there could be no reason for appellant to continue to hold back any part of the truth in the hopes of leniency. He still had ample time before the board's decision would become effective in which to file a further request for reconsideration setting forth in detail his asserted charge of promises of leniency by the board's investigators. However, he did not do this. There is no reason at all why appellant could not have made his allegations about false promises of leniency, why he could not have presented to the board arguments that he would later suggest to the superior court and, failing there, to this court. But he failed to do this and in so doing he failed to exercise reasonable diligence as required by section 1094.5 of the Code of Civil Procedure and therefore failed to lay a foundation for the admission of such testimony in the trial court.

Appellant argues that this ''issue'' arose after the hearing, presumably because the oral announcement of revocation following the hearing on August 28 and the formal decision of October 1, 1964, showed appellant that any ''promises'' of leniency were not going to be carried out. When this ''issue'' arose appellant should have raised it by his petition for reconsideration which he had ample time to do before the effective date of the decision of the board on November 2. An

analogous case under a statute with similar wording is here apposite. In *Stoumen* v. *Munro*, 219 Cal.App.2d 302, 314, 319 [33 Cal.Rptr. 305], appellant alleged "newly discovered evidence" in moving for new trial under Code of Civil Procedure, section 657, subdivision 4. The "new evidence" was an alleged agreement made *after* submission of the case for decision but *before* the findings were signed. In *Stoumen* the appellant had had his liquor license revoked and was seeking by way of mandamus to have the revocation set aside. The alleged agreement was a purported settlement between appellant and the Department of Alcoholic Beverage Control. Subdivision 4 of section 657, Code of Civil Procedure, requires such "newly discovered evidence" to be evidence which the movant "could not, with reasonable diligence have discovered and produced at the trial." The governing statute in the instant case, subdivision (d) of section 1094.5, Code of Civil Procedure, requires that new evidence to be admissible in the mandamus proceeding must be evidence which "in the exercise of reasonable diligence, could not have been produced . . . at the hearing before respondent, . . ." In *Stoumen* the court held that the "trial" is not complete until findings are signed and filed. Similarly, administrative proceedings are not final until a decision becomes effective 30 days after it is delivered or mailed to respondent. (Gov. Code, § 11519, subd. (a).) In *Stoumen* the appellate court upheld the trial court's denial of a new trial because of appellant's failure to use "reasonable diligence" and produce the material discovered after submission of the case but prior to the signing of the findings and judgment. Similarly, appellant here failed to use "reasonable diligence" to bring the newly discovered "issue" to the attention of the board prior to the decision becoming final.

■ The trial court in its discretion properly excluded additional evidence on the question of mitigation. First, Government Code, section 11520, subdivision (b) provides for evidence on mitigation before the board—not before the court. Secondly, under the principles heretofore stated with respect to the limited character of trial de novo in an administrative mandamus proceeding, the trial court was not required to accept such evidence. Thirdly, appellant had a full opportunity to present his evidence in mitigation in the administrative hearing and took full advantage of it.

Evidence in mitigation is relevant to the penalty, not to the issue of whether the unprofessional acts were committed. The decision as to penalties is for the administrative agency. (*Nardoni* v. *McConnell*, 48 Cal.2d 500 [310 P.2d 644].) In that case

appellants sought to produce evidence in mitigation at the hearing on their petition for writ of mandate. The Supreme Court held that such evidence was properly excluded: "... [H]ere such evidence had no relevancy, for petitioners had practically admitted by virtue of the stipulation the acts constituting the numerous violations charged. [Citation.] While such evidence might have been properly admitted at the disciplinary hearing for consideration of the commissioner in determining the nature of the penalty to be imposed, it was not material upon the trial of the mandamus proceeding in the superior court. The matter of fixing the penalty was not for the court but for the commissioner in the exercise of his discretion. [Citation.]" (*Ibid.* p. 505.)

Appellant had a full opportunity to present any evidence he deemed material on the question of mitigation in the hearing before the board. Some 58 pages of the 63 pages of transcript of the administrative hearing are devoted to his testimony in mitigation. Furthermore, some of the matters to which he desired to testify in the court proceeding had already been covered in his testimony before the board and were therefore before the court in the transcript of those proceedings. In other matters it seems that he wanted to change somewhat his prior testimony before the board, and in still others he simply wanted to amplify the explanations previously given. It is clear that in declining to hear this proffered testimony on mitigation the trial court did not abuse its discretion.

Finally, appellant argues that no cause for disciplinary action was either stated or proved under the second cause for disciplinary action. This count charges that "On January 7, 1964, respondent offered and agreed to procure a criminal abortion on a person known to him as Sandy Douglas." Appellant stipulated to the truth of this count. Sandy was not, in fact, pregnant but appellant, relying on her statement to the contrary, believed that she was pregnant.

Appellant's contention here is that pregnancy is a necessary element of disciplinary action for abortion and that, since it now appears that Sandy was not in fact pregnant, no cause for disciplinary action is either charged or established with respect to her. His position is not well founded. The law is clear in this state that proof of pregnancy is not required to establish the guilt of a defendant charged with the crime of abortion under section 274 of the Penal Code. The law on this question is succinctly stated in *Kendall* v. *Board of Osteopathic Examiners,* 105 Cal.App.2d 239, 244 [233 P.2d 107]:

"Petitioner's claim of failure of proof of pregnancy is based on his erroneous contention that the board was required to prove pregnancy in order to substantiate the charge against petitioner. He quotes section 274 of the Penal Code as it read prior to 1935, when it was amended taking out the word 'pregnant.' Now proof of pregnancy is not required to establish guilt of the crime of abortion. '. . . Since the amendment to section 274 of the Penal Code in 1935, it has not been necessary to prove that the woman on whom the operation was performed was pregnant at the t me of the cc mmission of the offense. [Citations.] The performing of the operation with the intent on the part of the accused person to produce or procure a miscarriage constitutes the offense even though the woman on whom the operation is performed is not in fact pregnant.' [Citations.]'' Later cases which confirm the principle that pregnancy is not an essential element to establish the guilt of a person charged with the crime of abortion are: *People* v. *Gallardo,* 41 Cal.2d 57, 68 [257 P.2d 29] ; *People* v. *Cummings,* 141 Cal.App.2d 193, 197-198 [296 P.2d 610] ; *People* v. *Feigin,* 174 Cal.App.2d 553, 568 [345 P.2d 273]. The only case cited by appellant for the contrary proposition, *Wyatt* v. *Cerf,* 64 Cal.App.2d 732 [149 P.2d 309], does not decide, but seems to assume that pregnancy is an element. The case neither mentions Penal Code section 274 nor *Rinker* v. *State Board of Medical Examiners,* 59 Cal.App.2d 222 [138 P.2d 403], a decision of the previous year. The assumption made in the *Wyatt* case does not represent the law of this state. Further, pregnancy is no more an element of an abortion in disciplinary proceedings under Business and Professions Code section 2377 (which refers to ''criminal abortions'') than it is in criminal proceedings under Penal Code section 274. (*Kendall* v. *Board of Osteopathic Examiners, supra,* at p. 244.)

By his own stipulation and testimony before the Board of Medical Examiners appellant admitted the truth of the several causes of disciplinary action. He had full opportunity before the board to present any matters in mitigation, and the hearing on the mandamus proceeding was in accord with the rules and principles applicable to such specialized proceedings.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied November 15, 1966, and appellant's petition for a hearing by the Supreme Court was denied December 21, 1966.